Clegg  v.  Varnell.

EDWARD CLEGG AND OTHERS v. WILLIAM M. VARNELL AND
ANOTHER.

The substance of the rules upon the subject of multifariousness appears to be,
that each case must be governed by its own circumstances, and whether it be
multifarious or not, must be left in a great measure to the sound discretion of
the Court.

Where several executions against the husband, in favor of different plaintiffs,
are levied upon property claimed by the wife, she may enjoin all the execu-
tions in the same suit.

Where several executions against the husband, in favor of different plaintiffs,
are levied upon property claimed by the wife, the absence of some of the
plaintiffs in execution from the State, involving by possibility the delays of
citation by publication, is not a good ground for sustaining an exception on
the ground of multifariousness ; at all events, not after all the plaintiffs in
execution have appeared and answered.

Where several executions against the husband, in favor of different plaintiffs,
are levied upon property claimed by the wife, it would seem that a suit by the
husband and wife, in behalf of the wife, to enjoin the sale of her property,
and in behalf of the husband to enjoin the executions, or some of them, abso-
lutely, for objections to the judgments, is not bad for multifariousness.

Quere, whether a third person who claims property levied upon by execution
against another, may enjoin the sale on the ground that the execution was
not issued within the twelve months.

Where the husband and wife obtained an injunction against several executions
levied on property claimed by the wife, and it was also alleged that one of
the executions had not been issued within the twelve months, the Court said
that by cross-petition in the nature of a *scire facias*, or action of debt, the
original judgment might be revived, and in the meantime, the defendant
might controvert the issue as to the ownership of the property, and ascertain
whether it was or not liable to execution on his judgment.

It is not multifarious in a suit by the husband and wife to enjoin the sale of
property on execution against the husband, to claim the property as the sepa-
rate property of the wife, and also as their homestead.

The questions presented in this cause have been discussed as if the rules in
Chancery on the subject of multifariousness had binding force and authority

Clegg v. Varnell.

in our code of procedure. It is scarcely necessary to say that they have no conclusive force, and will be recognized only when they may be deemed reasonable, and may harmonize with our system and the principles and rules of our pleadings and practice.

A prominent feature in our system of procedure is, that litigation between parties should be determined in a single suit. If this cannot be done without oppressive delays or expense, or such confusion as would occasion injustice, the suit should not be dismissed as to all the parties or causes of action, unless the plaintiff refuses to amend so as to avoid the difficulties, and retrench the multifariousness of his pleadings. The suit, if there be a good cause of action against any defendant, should be prosecuted against that defendant, the costs of the parties dismissed being paid.

Appeal from Calhoun. Tried below before the Hon. Fielding Jones.

Petition filed July 25th, 1854, as follows :

Your petitioners, Thomas Haynes, Edward Clegg, and Mariah J. Clegg, his wife, all citizens of said county of Calhoun, would most respectfully represent, that in November, 1846, your petitioner, Edward Clegg, purchased of Henry Kitchen, now deceased, lots Nos. one, two, eleven and twelve in block No. six in the town of Port Lavaca, in the said county of Calhoun, and received from him, bond for title upon payment of the purchase money ; that after the death of the said Kitchen, his executor, David Murphy, commenced suit against your petitioner, Edward Clegg, in the District Court of said county, and did, at the September Term, 1849, obtain a judgment against him for the sum of seven hundred and forty-one 88-100 dollars for the purchase money due on said lots and the interest thereon ; that, after the rendition of said judgment, and before the March Term, 1852, of said Court, and whilst your petitioner, E. Clegg, was absent from the State, to-wit, in the State of California, your petitioner, Mariah J. Clegg, paid and discharged said judgment, with the exception of $167 7-100, with money and property belonging to her in her separate and individual right ; that at the March Term of said Court, 1852, it was decreed that said Murphy, as executor of said Kitchen,

had a lien upon said lots for the residue of the unpaid purchase money, due and unpaid, and it was further decreed that said property be sold to pay the same. They would further show that said lots were under, and by virtue of said last mentioned decree, sold by the Sheriff of said county at public sale, on the 4th day of January, 1852, as the law required, and that one J. M. Stanton became the purchaser of the same, and received from said Sheriff, a deed, a copy of which is herewith attached marked " A," and prayed to be made a part of this petition. They would further show that your petitioner, E. Clegg, never did receive a title from the said Kitchen or the said Murphy, or from any other person for the said lots, and that he never was invested with a legal title to the same. Your petitioners would further show that the said J. M. Stanton did, on the 30th day of August, 1853, make, execute and deliver to your petitioner, Thomas Haynes, in trust for your petitioner, Mariah J. Clegg, a deed of conveyance for said lots, a copy of which is hereto at- tached and prayed to be made a part of this petition. Your petitioners would further show that immediately after the pur- chase of said property from said Kitchen, your petitioners, Ed- ward and Mariah, entered into possession of the same, and that they have ever since held possession of the same, using and oc- cupying the same as their homestead, and that they have no other homestead. They would further show, that, at the Spring Term, 1852, one William M. Varnell obtained a judgment in the District Court of said county, against your petitioner, Ed- ward Clegg, for the sum of two thousand dollars, with interest thereon from the 3d day of August, 1851 ; that at the March Term of said District Court, one Eward J. Feeny obtained a judgment against the petitioner Edward for the sum of seven hundred and seven 28-100 dollars ; that the said Varnell and Feeny have caused executions to issue on said judgments against your petitioner Edward, and have had the same levied on said lots as the property of the said Edward, and caused the same to be advertised for sale by the Sheriff of said county on

Clegg v. Varnell.

the first Tuesday in August, A. D., 1854. And your petitioners further show that they are informed and believe and charge that the seizure of said lots under and by virtue of said executions is illegal and void for the following reasons :

1st. That the said lots are not now, and never were, the property of the defendant, Edward Clegg, but the property of your petitioner, Thomas Haynes, in trust for your petitioner Mariah ; that the said lots and buildings constitute and are the homestead of your petitioners, Edward and Mariah. And further that the execution issued on said judgment, in favor of the said Varnell is void ; being the first execution issued on said judgment, and more than one year having expired between the rendition of said judgment and the issuance of said execution. [And your petitioner, Ed. Clegg, would further show that a few days after the filing of the petition of the aforesaid case of Varnell v. him, he fully paid and discharged the debt, for which said judgment was rendered, by delivering to said Varnell, a stock of cattle which was received by him in full payment of said debt ; and he would further show that said judgment rendered against him in favor of said Varnell, was rendered by default ; that he never had any legal notice of the pendency of said suit, nor had he been cited to answer the same, either by personal service, or by any of the modes pointed out by law. He would further show that the aforesaid judgment in favor of Edward J. Feeny, was rendered on a judgment, which the said Feeny obtained against him in the State of California, on the 10th day of July, 1850 ; that said judgment in California, was rendered against him by default, without personal service and that he had a good and valid defence to said cause of action, and that he was advised and charged that he could make the same defence to the action, brought on said judgment in this State, that he could have made to the original action, and when the said suit was commenced on said judgment in Calhoun county, he employed an attorney of said Court, ———— Stewart, to make his defence ; that he was subsequently in-

formed, and believes it to be true, that, in consequence of the
neglect of his attorney, judgment was taken against him at the
return Term of said Court, and that he was thereby debarred
of his defence ; and that he did not learn his mistake and that
said cause was continued and the judgment taken at a sub.
sequent Term, until the issuance of the execution afore-
said.]

The premises considered, your petitioners pray that the said
William M. Varnell and Edward J. Feeny may be made de-
fendants hereto, and that they be cited to be and appear at the
Fall Term, A. D., 1854, of the District Court, to be held at the
Court-house in said county of Calhoun, to answer the charges
herein contained ; and that they and —— Howerton, Sheriff of
said county, their agents and attorneys may be enjoined from
selling the said lots of land, levied upon as aforesaid by vir-
tue of the executions aforesaid ; that, upon a final hearing, said
injunction be made perpetual; and that they may have judg-
ment for their costs, &c.

[And your petitioner Edward Clegg, prays that the said Var-
nell and Feeny may be enjoined from collecting their judgments
rendered against him as aforesaid and for such other relief as
he is justly entitled to, and for costs and charges herein ex-
pended, &c.]   Signed, &c.

The State of Texas, County of Calhoun. I, Edward Clegg,
one of the petitioners in the foregoing petition, for my unction,
and agent for co-petitioners, who are both absent from this
State, being sworn, state on oath that the charges and allega-
tions, made in said petition as true, are true in substance and,
in fact, and that those charges and allegations, therein made
on information and belief, I believe to be true.   Signed, &c.

Injunctions were issued.   Both defendants appeared and
filed separate answers, Varnell in March, 1855, and Feeny in
September, 1855, first excepting to the petition on the follow-
ing grounds :

1st. In joining this defendant with E. J. Feeny, when the ac-

tion of said plaintiffs, if any they had, was against this defendant and said Feeny severally.

2d. In joining the claim of the said plaintiffs, Thomas Haynes, and Mariah J. Clegg, to the property levied upon, with the action of the plaintiff, Clegg, to review and set aside the judgments of this defendant and said Edward, and to restrain the enforced payment of the same.

And the said defendant further excepts to the petition of said plaintiffs for multifariousness, and for special causes of exception says :

1st. That this defendant is improperly joined with Edward J. Feeny, because the petition shows their interests, rights and defence to be several and in no way joint or in community with each other.

2d. The petition prays a joint judgment against this defendant and Edward J. Feeny, when the subject-matter of their right and their defence is several and wholly distinct from each other, and the issues presented by one would depend upon matters of fact and upon records in no wise connected or related to the other.

3d. The causes of action set up by plaintiffs against this defendant and Edward J. Feeny are, in law and equity, wholly distinct and separate, and the remedies prayed for by said plaintiffs are not properly, nor can they be granted in a single judgment.

4th. The petition joins improperly the plaintiffs, Thomas Haynes and Mariah J. Clegg, with the plaintiff Edward Clegg, in an action to review, annul and set aside judgments aginst the said Edward Clegg, in which the other plaintiffs have no interest, and by which they are in no way bound.

5th. It joins Thomas Haynes, a trustee claiming to hold the legal title of the property levied upon, for the use of Mariah J. Clegg, with the said Mariah J. and Edward Clegg, in the assertion of the homestead exemption.

6th. That said petition is generally multifarious, both as to

plaintiffs and defendants, as to causes of action and remedies.

And said defendant further excepts, and for other special causes of exception says :

7th. That the plaintiffs have shown no sufficient ground in law or equity for a review of the judgment in favor of this defendant against Edward Clegg.

8th. The allegations contained in the petition of plaintiffs show no sufficient equitable grounds for the remedial process prayed for by plaintiff.

Spring Term, defendants' exceptions sustained and plaintiffs had leave to amend, which was done by striking out the parts of the petition which are enclosed in brackets. Same Term, judgment for defendants, on the petition as amended, and defendants' exceptions.


*Cunningham & Holt*, for appellants.

*Seawell* and *Baldwin*, for appellees.


HEMPHILL, CH. J.   The errors assigned are :

1st. In sustaining defendants' exceptions to the plaintiffs' amended petition.

2d. In sustaining the exceptions to the petition.

3d. In dismissing the petition and rendering judgment against the plaintiff Edward Clegg and his sureties.

4th. In overruling the motion for a new trial.

The judgments of Varnell and Feeny were against Edward Clegg, one of the plaintiffs, individually, and the petition was amended by striking out all those allegations which impeached the validity and correctness of the judgment, and prayed that the defendants might be enjoined from collecting said judgments.  The petition, as amended, was, in effect, a petition by a husband and wife, or by the husband representing the wife, to enjoin the sale of the wife's separate property under

executions issued on judgments recovered against the husband individually, and not against the wife, nor against the husband and wife jointly.    There was  a further gronnd in  relation  to the execution on the  judgment in favor  of Varnell ;  and that is, that it was void, being the first execution, and having been issued more than twelve months after the date of the judgment. On this latter ground, viz. :  that  the execution was void,  the husband  may be  regarded as  more especially representing and insisting upon his individual rights.    In  all  other  matters he may be regarded as representing the wife and her trustee.    In the affidavit  he states himself  to be  their agent,  they  being absent from the State.    The  law  invests  him with  an agency on behalf of the wife.    It is his duty to  protect her property ; and in her absence, this duty acquires increased force and obligation.    If this amended petition were a suit by  the wife, and in effect it is  to be regarded  as  such, so far  as it asserts and seeks protection for  her separate rights, (and this is the main object of the suit,) the question under  the first  assignment, is whether it be obnoxious  to  the  exceptions as filed by the defendants, or in other words, whether it be or  not multifarious.

Two executions, on distinct judgments, recovered by distinct plaintiffs against the husband, were levied on the property of the wife, and the question is, must she institute a separate suit for injunction against  each plaintiff in the  executions, or  may she join them as defendants, and thus in a single suit settle the question as to her right in the property ?

Judge Story, in his treatise on  Equity Pleadings, defines multifariousness to be the improperly  joining in one  bill  distinct and  independent  matters against  one defendant, or the demand of several matters of a distinct and independent nature against  several  defendants  in the same  bill.    In  the  latter case, the  proceeding  would  be  oppressive,  because it would tend to load  each defendant with  an unnecessary burden of costs,  by swelling the pleadings with the statement of the several claims of the  other defendants,  with which  he  has no con-

nection.  In the former case, the defendant would be com-
pellable to unite in his defence different matters wholly uncon-
nected with each other, and thus the proofs applicable to each
would be apt to be confounded with each other, and great
delays occasioned by waiting for the proofs respecting one of
the matters when the others might be ripe for a hearing. (Sec.
271.)

As an example of multifariousness, it is said that if an estate
be sold in lots to different persons, the purchasers could not
join in a bill against the vendor ; for each party's case would
be distinct, depending on its own peculiar circumstances ; for
the same reason the vendor would not be allowed to sue in
one bill all the purchasers, for specific performance.  (Id. Sec.
272.)  On the other hand it is said, that a bill will not be
multifarious because it joins two good causes of complaint
growing out of the same transaction, where all the defendants
are interested in the same claim of right, and where the relief
asked for in relation to each is of the same general character.
(Id. Sec. 284.)  In Sec. 533 it is stated as the result of the auth-
orities, that where there is a common interest and a common lia-
bility in the defendants, and a common interest in the plaintiffs,
different claims to property, (if the subjects are such as may with-
out inconvenience be joined,) may be united in one suit.  Thus a
bill is not necessarily multifarious by reason of its seeking to
redeem two distinct mortgages of different parcels of real
estate ; or of its seeking specific performance of different con-
tracts relating to different parcels of real estate.  (12 Metc.
R. 323.)

A bill has been sustained by the owner of a sole fishery,
against several persons who claimed under distinct rights ;
and also by seventy-two underwriters to sustain several
actions upon different policies of insurance effected by the de-
fendants upon different ships. (3 Price, 164.)  The latter case
may perhaps be subject to some question.  In Gaines and Wife
v. Chew et al., 2 Howard, 619, it was held that a bill filed

against the executors of an estate and those who purchased
from them, is not upon that account alone multifarious.   In
the Opinion, the Court said that a bill might have been filed
against each of the defendants, but the question is whether
they may not all be included in the same bill.   The complain-
ant claimed as devisee or as heir at law of the deceased, and
whether she claimed as one or the other, there was no misjoin-
der of claims.   The defendants claim mediately or immedi-
ately under the will of 1811, although their purchases were
made at different times and for distinct parcels of the prop-
erty.   They have a common source of title, but no common
interest in the purchases.   The facts of the purchase, inclu-
ding notice, may be peculiar to each defendant, but these may
be ascertained without inconvenience and expense to the co-de-
fendants.   In every fact which goes to impair or establish
the authority of the executions, all the defendants are inter-
ested   In its present form, the bill avoids multiplicity of suits,
without subjecting the defendants to inconvenience or unrea-
sonable expense.

In Sec. 539 of Equity Pleadings by Story, the author states
as a conclusion from the authorities, that there is not any posi-
tive, inflexible rule as to what constitutes multifariousness which
is fatal to the suit on demurrer.   The Courts have always ex-
ercised a sound discretion in determining whether the subject
matters of the suit are properly joined, and whether parties
plaintiffs or defendants are properly joined or not.   (Camp-
bell v. Mackey, 1 Mylne & Craig, 603 ;  Oliver et al. v. Piatt,
3 Howard, U. S. Rep. 411, 412.)

The substance of the rules on this subject appear to be, that
each case must be governed by its own circumstances, and
whether it be multifarious or not, must be left in a great mea-
sure to the sound discretion of the Court.

Defendants ought not to be put to inconvenience and ex-
pense in litigating matters in which they have no interest ;
and on the other hand, unnecessary litigation and multiplicity

of suits should be avoided. While defendants are protected, plaintiffs must not be put to the necessity of bringing two suits instead of one. (3 Mylne & Craig, 85 ; 7 Sim. Rep. 241, 254.)

The rule against multiplicity of suits has peculiar force in our system of procedure. Within reasonable limits it is the cardinal principal as to joinder of parties and causes of action. Even, jurisdictions which are distinct and separate in other States, are blended in our system ; and legal and equitable causes of action and grounds of defence may be adjusted in a single controversy.

In the case before us, the plaintiffs in the executions who are made defendants in this suit, are alike interested in every fact which may go to establish or defeat the right of the wife, as against the husband, to the property. Surely a claimant attempting to restrain the sale of his property under execution against another person, is not to be compelled to institute suit against each plaintiff in execution where there is but one common matter in dispute, and that is whether the property belongs to the claimant or to the defendant in the executions. To state the proposition is to answer it. The fact that Feeny is absent in California, and that there may be some delay before he could be cited by publication, is no such unreasonable inconvenience to Varnell as to impose on Mrs. Clegg the necessity, expense and trouble of bringing two suits instead of one, when the main object of both suits would be an inquiry as to her right in the property.

It may be said that the question as to the validity of the execution on the part of Varnell, is a matter in which Feeny has no interest. Nor has Mrs. Clegg any interest whether the execution be void or voidable or not. The last proposition, which is, in effect, a denial of the right of a claimant of property to impeach the validity of an execution against a third person levied on that property, is, to say the least, questionable. The main inquiry in such controversy is as to the right in the property, whether in the claimant or in the de-

fendant in the execution; but the claimant may certainly protect herself by showing that the execution is void, and should not be levied on the property of any one. But the husband, the defendant in the execution, is also a party plaintiff in this suit, and though generally he represents and insists upon the rights of his wife, yet, to the extent of the allegation that the execution was void, he may be regarded as representing himself. But the rights of the husband and of the wife as to this matter of the validity of the execution, are not so distinct or of a nature so foreign to each other, as to create a misjoinder of parties or of causes of action. The litigation as to whether the execution be void can create no expense or inconvenience to Feeny. The question depends on the single fact as to the time of the issue of the execution, whether within or after twelve months from the date of the judgment. If after the twelve months, as alleged in the petition, it is void, or at least voidable. It may not be so utterly void as not to protect officers and purchasers under it, yet it is voidable, and may be enjoined at the instance of the defendant in execution, or, it is believed, at the instance of third persons upon whose property it may be attempted to be levied. The point, depending altogether on the time of the issue of the execution, admits of no dispute, can produce no confusion, or occasion inconvenience and expense.

The execution of Varnell must be set aside, and he will be liable for the costs of the suit to that extent, yet by cross petition in the nature of a *scire facias* or action of debt, he may have his original judgment revived, (Erhart v. Oldham, at Austin, December Term, 1856, *supra*,) and in the meantime, as the plaintiffs have made the issue denying that Clegg, the husband, is the owner of the property, he may controvert the issue and ascertain whether the property be or not liable to execution on his judgment.

The question of the lots being the homestead of husband and wife, or to what extent they may be claimed as homestead, is

Vol. XVIII.          20

not multifarious. Both husband and wife have an interest in claiming the exemption, and the defendants have a common interest to defeat or limit the claim. All these matters can be conveniently adjusted in one suit. They are not multifarious in their nature. They will neither produce confusion, expense or unreasonable delay.

As to the point that the petition for injunction is too late, the time prescribed by the Statute for obtaining injunction to stay execution having expired, it is sufficient to say that the Act of 1846, (Hart. Dig. Art. 1599,) has reference to the granting of injunctions for causes existing at the rendition of the judgment, and can have no application to injunctions sought for causes arising subsequent to the judgment. (9 Tex. R. 119, 487.)

In the amended petition, the plaintiffs seek the injunction against the executions principally on the ground that it was levied on the property of a third person, a stranger to the execution. The cause for the injunction did not arise until the levy of the executions, and the case does not come within the purview of the Statute regulating injunctions.

The questions presented in this cause have been discussed as if the rules in Chancery on the subject of multifariousness had binding force and authority in our code of procedure. It is scarcely necessary to say that they have no conclusive force, and will be recognized only where they may be deemed reasonable, and may harmonize with our system and the principles and rules of our pleadings and practice. A prominent feature in our system of procedure is, that litigation between parties should be determined in a single suit. If this cannot be done without oppressive delays or expense, or such confusion as would occasion injustice, the suit should not be dismissed as to all the parties or causes of action, unless the plaintiff refuse to amend so as to obviate the difficulties, and retrench the multifariousness of his pleadings. The suit, if there be a good cause of action against any defendant, should

be prosecuted against that defendant, the costs of the parties dismissed being paid.

We are of opinion that the demurrer to the amended petition should not have been sustained, nor should the petition, as amended, have been dismissed. The original petition was, it is believed, obnoxious to the objection of multifariousness.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.