## CRANE *vs.* ONDERDONK and others.

Although an agent, for nonfeasance and omissions of duty, is not liable, except to his principal, the rule is otherwise when the act complained of is misfeasance. In all such cases, he is personally responsible, whether he did the wrong intentionally, or ignorantly by the authority of his principal; for the principal could not confer on him any authority to commit a tort upon the rights or property of another.

The plaintiff, at the solicitation of S., who was the owner of certain stock which he had transferred to V., to secure a debt, had agreed to furnish the money required to discharge such debt, and had made the necessary arrangements for an advance of the money to him by W. & S., and deposited with them securities for their protection. *Held* that this was a sufficient consideration for an agreement between him and V. by which the plaintiff was to pay him the amount of his claim against S., and that, upon such payment V. should assign the stock to the plaintiff, and transmit the certificates to some third person, who should deliver the same to the plaintiff on receiving from him payment of the amount due V.

V. transmitted such certificates to O., with the proper power of attorney, to transfer the stock to the plaintiff, and constituting O. his " agent and attorney in fact" to deliver such stock to the plaintiff on receiving payment of the amount due V. Subsequently, O. without the knowledge or consent of the other parties, caused a portion of such stock to be transferred to himself, and the remainder to F. The plaintiff tendered to O. the amount claimed by V., and requested a transfer of the stock to him. O. refused to accept the money and make the transfer, claiming that he and F. were the owers of the stock. *Held* that the plaintiff was the assignee of S.'s right of redemption, and that being ready to perform the duties devolving upon him, as such, he was *pro hac vice*, the owner, and possessed of all the rights of S. and entitled to enforce them.

*Held, also,* that O. having received the stock for the purpose of transferring it to such person as S. should designate, had, in causing the same to be transferred to himself and F. without the consent of S. or his appointee, transcended the power conferred upon him, and was guilty of misfeasance towards the owner of or person entitled to its possession.

*Held, further,* that O. being a wrongdoer, was not in a position either to dispute, or to interfere with, the plaintiff's rights. That he could not take advantage of any assumed defect in the plaintiff's title or interest; and that he having wrongfully converted the stock, and acted in contravention of his trust to V. and his *quasi* trust to S. and to the plaintiff whose interests he knew and disregarded, the plaintiff was entitled to relief against him; and that a judgment dismissing the complaint was erroneous.

APPEAL, by the plaintiff, from a judgment entered at a Special Term, dismissing the complaint.

This action was tried at a Special Term of this court, in October, 1872, before Justice BARRETT. The defendants Onderdonk and Field are the only ones who answered or contested the action. No testimony was introduced by them on the trial.

The complaint alleges, and the plaintiff proved, the following among other facts: That in the month of February, 1871, one John Van Dyke, then residing at Wabasha, in the state of Minnesota, held 600 shares of the capital stock of the Ebervale Coal Company, of the par and actual value of $30,000, as collateral security for balance of an indebtedness to him from Augustus T. Stout of New York city of about $12,000, which stock Stout had a right to redeem; that Stout entered into an arrangement with the plaintiff Crane, by which he gave up to him this right to redeem said stock and take it up; that Crane arranged with the firm of Van Wickle & Stout, (composed of Van Wickle and G. Lee Stout,) for the money necessary to make such redemption; that Crane constituted the said Augustus T. Stout his agent to negotiate and arrange with Van Dyke for the redemption of the stock; that Crane, through his agent, Stout, arranged and agreed with Van Dyke, that he, Crane, should pay him the amount of his claim, and Van Dyke agreed that he would thereupon transfer said stock to Crane.

All the parties except Van Dyke resided in or near New York city. The negotiations for the above arrangement were carried on, and the agreement was made, by written correspondence with Van Dyke. Several letters relating to the transaction passed between himself and Stout and Onderdonk. Van Dyke's testimony was taken by commission, and he produced many of the letters written by or to him.

At the request of Crane's agent, Van Dyke agreed to, and did, transmit the certificates of stock to the defendant Onderdonk, for Crane, to be given to him on his

paying the debt against Stout. Van Dyke accompanied the certificates with a blank power of attorney, and with instructions to Onderdonk to fill it out and transfer the stock to such person as Augustus T. Stout should name, on receiving from such person the amount of the indebtedness. Onderdonk wrote a letter to Van Dyke, after he received the certificates, acknowledging the receipt of them for the specific purpose in question. After he received the certificates from Van Dyke, he saw Stout, and was informed by him that the plaintiff Crane was the person who was to take up the stock. He was also informed by Stout that Crane had arranged with the firm of Van Wickle & Stout to advance the necessary sum for him to pay Van Dyke's claim, and that he, Stout, was authorized to act for Crane in the transaction. At the first interview which Onderdonk had with Stout, after receiving the certificates of stock from Van Dyke, he professed a willingness to carry out the transaction, but suggested, or agreed to a short delay, in order that some adjustment should be made of a claim for extra allowance, which Van Dyke thought he ought to have, and also of some alleged discrepancy in Van Dyke's account. Onderdonk received the certificates of stock about February 4th, 1871. On the 20th of that month, and while Stout and Van Dyke were endeavoring to effect the above adjustment, Onderdonk, without the knowledge or consent of any of the other parties, had 560 shares of the stock transferred to himself, and forty shares of it transferred to his sister, the defendant Sarah M. Field. On the 20th of February he wrote to Van Dyke that he had concluded to take the stock himself, and inclosed certificates of deposits, &c., to pay the same.

Van Dyke testified that he replied to that letter, saying to Onderdonk, that his taking the stock was satisfactory to him, provided it was assented to by Stout. Stout did not assent to it, but in behalf of the plaintiff Crane, at once tendered to Onderdonk the money he had

paid Van Dyke, and demanded the stock. Onderdonk rejected the tender, and refused to transfer the stock, and claimed that he had become the purchaser and owner of the same.

The complaint alleges that Onderdonk had fraudulently made use of his position as custodian of the stock for delivery to the plaintiff, to convert it to his own use and to deprive the plaintiff of the value of the same, over and above the amount to be paid to Van Dyke, knowing that the plaintiff was ready and willing to pay, and for the purpose of securing to himself the profit of about $19,300; and asks judgment that upon payment or tender of the amount of Van Dyke's claim, the defendants, Onderdonk and Field, assign the 600 shares of stock in question to the plaintiff, and also for an injunction, &c.

The judge decided that the allegations in the complaint were all true, and were fully proved, but that the plaintiff was not entitled to any relief whatever, and ordered judgment, dismissing his complaint without costs. He based his conclusions on the assumption that the plaintiff had no standing in court — that there was no such privity between him and Onderdonk as gave him any legal remedy.

*S. W. Fullerton,* for the appellant. I. It will not be disputed by any one but that the defendant Onderdonk was guilty of a flagrant, wilful conversion of the stock in question, and that he ought not to escape with the fruit of his wrong.

It is conceded on the part of the appellant, that if Onderdonk is to be regarded as the agent of Van Dyke only, and owed a duty to no one else, he cannot be made liable to any third person for mere nonfeasance or omission of duty in the course of his employment. But it is submitted that this is not the correct view to take of the case.

Crane *v.* Onderdonk.

In the first place it is well to observe the distinction between nonfeasance and misfeasance on the part of an agent.

In respect to nonfeasance, or mere neglects in the performance of duty, the agent is liable only to his principal. But for his own positive or wilful torts he is liable to third persons.

This distinction is observed in the case of *Gutchess* v. *Whiting*, (46 *Barb. R.*, 139,) where the principal sent barley to his agent to sell for him, which he advised him was not *new* barley. The agent sold it to the plaintiff for seed barley, for which purpose, not being new, it was useless. The purchaser having sued the principal, and having failed to recover, brought an action against the defendant (the agent) for fraud, and the court held him liable as having acted *ultra vires*, and as having made himself the principal in the fraud.

In *Hecker* v. *De Groot* (15 *How. Pr.*, 314,) Clerke, J., said: "The defendants are sued for damages occasioned by a fraud committed by them. It matters not in what capacity they acted, or with whom they co-operated. They were instrumental in perpetrating the acts constituting the fraud. If, indeed, a person is the unconscious instrument of others in committing an injury, he is not personally liable for the consequences; but where he knowingly engages in an unlawful cause, whether for his own immediate benefit or not, he cannot escape liability by showing that he acted as agent."

But it is hardly necessary to quote authorities to show that for mere neglect of duty an agent is answerable only to his principal; but for an unauthorized fraud, he, and not the principal, is liable.

It will be said, however, that Onderdonk practised no fraud or wrong upon Crane; for the reason that Crane was not the owner of, nor had any right to redeem the stock. The judge took this view of the case, and hence dismissed the complaint. We submit that it was incor-

rect, and that an entirely different one should have been taken.

What is the plain truth of the case, as it was presented by the pleadings and proofs ? It is simply this : Stout had the right to redeem the stock from Van Dyke. By his arrangement with Crane, he agreed with him that if he would pay his debt to Van Dyke he would surrender that right to him, and agreed with him that he might have and exercise it. Crane constituted him his agent to make the redemption. As such agent he corresponded with Van Dyke on the subject — named Onderdonk as the proper person to have the custody of the stock for delivery to Crane, on receiving from him the amount of Van Dyke's claim — that he and Van Dyke finally agreed that the stock should be placed in Onderdonk's hands for that purpose — that Onderdonk received it pursuant to this agreement, and under an agreement on his part with Van Dyke and Crane, that he would deliver the stock to Crane on receiving from him the sum of Van Dyke's claim, and would pay over to Van Dyke the said moneys when received — that Crane, by his agent, tendered the required amount to Onderdonk, and demanded the stock ; but he refused to deliver it and fraudulently converted it to his own use, by having it transferred to himself and sister.

It is submitted that this is a proper view to take of the case. If so, it is not true that Onderdonk was the agent only of Van Dyke. By virtue of Stout's arrangement with Crane, the latter became entitled to demand and have the stock, on paying or tendering the debt due Van Dyke. By virtue of the agreement between Crane and Van Dyke, Onderdonk became the custodian of the stock for both. In other words, he became a party to an agreement with Van Dyke and Crane, that he would take, and hold, and deliver the stock and receive the debt. He received the stock for Crane, to be delivered up to him when Crane paid him the money. Having

consented to become the custodian of the stock under the arrangement, he must be held to have agreed with both Van Dyke and Crane that he would deliver it on payment. He was, therefore, the agent of both the parties, and they all stood in such privity with each other, because of the entire arrangement, that it can be said that Onderdonk owed a legal duty to Crane. In fact it can be said, without any violence to the case, that the delivery of the certificates of stock to Onderdonk was, under all the circumstances, a delivery to the plaintiff, conditioned upon payment by him of the amount of the debt, and whenever he paid, or tendered the amount, his right to the stock was complete. Especially is this so, in view of the fact that neither Van Dyke or Stout have repudiated the arrangement, and both insist that Onderdonk shall deliver the stock to Crane, pursuant to the agreement.

II. It was not necessary Crane should have made Stout any written transfer of the stock, or of the right to redeem it, to entitle him to make the redemption. Crane had a mere naked right to redeem, not evidenced by any instrument of writing. If he had possessed such an instrument or obligation from Van Dyke, the mere delivery of it to Crane by him under a parol agreement that he should pay the debt and have the stock, would have passed to him the right to redeem. But having no such writing, he makes a parol contract with Crane, by which he agrees that if he will pay his debt to Van Dyke he shall have the stock. By this agreement he surrendered to Crane his whole interest in the stock and in the right of redemption. (*Hastings* v. *McKinley*, 1 *E. D. Smith*, 273. *People* v. *Tioga C. P.*, 19 *Wend.*, 73. *Gram* v. *Cadwell*, 5 *Conn.*, 489. *Runyan* v. *Mersereau*, 11 *John.*, 534.)

The judge conceded that if Stout had brought the action, it would have been well brought. It is submitted that Crane succeeded to all Stout's right under and

by virtue of the agreement between them, and having tendered the debt owing by Stout to Van Dyke, he entitled himself to the stock, and hence the action was properly brought by him.

III. Assuming that Stout had a legal remedy against Onderdonk, then he was entitled to seek it in the present form of action.

*Smith & Woodward,* for the respondents. I. The plaintiff has no standing in court upon which he could found a claim for the relief sought in the complaint in this action. The plaintiff, as the friend of A. T. Stout, was to furnish the money for Stout, to enable him to pay the indebtedness to Van Dyke, and to take an assignment of the stock as security for the money advanced.

II. The arrangement or agreement upon which this action was founded, purports to have been made between the plaintiff and John Van Dyke, as the principals, and by and through Augustus T. Stout, as the agent of the plaintiff, and Peter C. Onderdonk, one of the defendants, acting as agent for Van Dyke. It was a part of the arrangement that the certificate of the stock was to be transmitted to some person near New York, who should transfer and deliver the same, and receive the money for Van Dyke; and the complaint expressly alleges, that Van Dyke constituted Onderdonk his agent and attorney in fact, to deliver the stock with the proper transfer, and receive payment of the money due to Van Dyke; and that the defendant Onderdonk had fraudulently made use of his position as the agent and attorney in fact of Van Dyke. If the plaintiff has a cause of action against any one, it is not against the defendant Onderdonk, but against John Van Dyke. Onderdonk was not the agent of the plaintiff, and owed him no duty. He was the agent of Van Dyke, and for a neglect to discharge his agency he is amenable to his principal,

and to no one else. If third persons are injured by the neglect of a known agent, the rule is *respondeat superior*, and their remedy is against the principal and not the agent. (*Denny* v. *The Manhattan Company*, 2 *Denio*, 115; *affirmed* 5 *Denio*, *p.* 639. *Phinney* v. *Phinney*, 17 *How. Pr. R.*, 197.) In *Colvin* v. *Holbrook*, (2 *N. Y.*, 126,) Justice Gardiner, at page 129, says: "It is also settled, if anything can be established by authority, that an agent is not liable to third persons for an omission or neglect of duty in the matter of his agency, but that the principal is alone responsible." And after citing authorities, adds: "The question must be deemed at rest in this state by the decision in *Denny* v. *The Manhattan Co.* (2 *Denio*, 118;) affirmed in the Court for the Correction of Errors."

The agent is not, in general, liable to third persons for his own nonfeasances or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal, there being no privity between him and such third persons; but the privity exists only between him and his principal. (*Story on Agency, sections* 308, 309.) The principal is liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances and omissions of duty of his agent in the course of his employment, authough the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies *respondeat superior*, and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal or indirectly with him, through the instrumentality of agents. (*Story on Agency*, § 452.)

III. The position taken by the plaintiff's counsel, on the argument of this case at Special Term, that Onder-

Crane *v.* Onderdonk.

donk was the agent of the plaintiff, cannot be maintained. It is nowhere in the complaint alleged that he was the agent of the plaintiff, and there is no evidence in the case to establish such a position; on the contrary, as shown in the first point, Onderdonk is expressly made the agent of John Van Dyke, and of no one else.

*By the Court,* BRADY, J. The plaintiff in this action was not entitled to the stock held by Van Dyke, until the amount for which he held it as collateral was paid. Onderdonk, to whom Van Dyke sent it for delivery to the person paying the lien upon it, converted it to his own use before any payment was made, advising Van Dyke that he had thus taken it, and remitting payment of the debt due the latter. Onderdonk, having received the stock for the purpose of transferring it to such person as Stout designated, transcended the power conferred upon him, and was guilty of misfeasance towards the owner of, or person entitled to, its possession. Although an agent, for nonfeasance and omissions of duty, is not liable, except to his principals, the rule is otherwise when the act complained of is misfeasance. In all such cases he is personally responsible, whether he did the wrong intentionally, or ignorantly by the authority of his principal; for the principal could not confer on him any authority to commit a tort upon the rights or property of another. (*Story on Agency,* § 311, *and cases cited. Hecker* v. *De Groot,* 15 *How. Pr. Rep.,* 314. *Gutchess* v. *Whiting,* 46 *Barb. R.,* 139.) The question presented, and upon which the success of the appellant here depends, is, therefore, whether the plaintiff acquired, by his agreement with Stout and subsequent arrangement relative thereto with Van Dyke, any title or interest in or to the stock which enables him to maintain this action. It appears that he had, at the solicitation of Stout, agreed to furnish the money necessary to discharge Van Dyke's debt, and

had made the necessary arrangements for the advance of the money to him by Van Wickle and Stout, and by depositing with them securities for their protection. This was a sufficient consideration for the agreement between him and Stout. (*Story on Contracts*, § 431, *and cases cited*—although the consideration was not disputed between them.) And the agreement thus made was ratified by the employment of Stout as his agent to obtain the transfer of the stock, which the latter proceeded to do. Stout never questioned the right of the plaintiff to the transfer. On the contrary he was desirous that it should be made, and the fund to accomplish it, and for which the plaintiff had provided, was awaiting an adjustment of the sum due from Stout to Van Dyke. All this was well known to the defendant Onderdonk, with whom, as the representative of Van Dyke, the negotiations were carried on. It also appears that an amount sufficient for the purpose was tendered by the plaintiff to Onderdonk and the stock demanded, but the money was not received, and the stock was not transferred or delivered. It is true that this incident was subsequent to the appropriation of the stock by Onderdonk; but it was, with the exception of forty shares, in his possession, and the latter doubtless under his control. The result of these facts and conclusions is that the plaintiff was the assignee of the right of redemption, and ready to comply with the duties which devolved upon him in virtue thereof, which the pledgor assisted him in discharging. He was therefore, *pro hac vice*, the owner. He possessed all the rights of Stout, and was endeavoring to enforce them. The defendant Onderdonk was not in a position either to dispute or to interfere with them. He could not take advantage of any assumed defect in the plaintiff's title or interest, in the face of the fact that the actual owner and the latter were acting in concert and for a lawful purpose. The right of Stout to remove the stock, to change its custody

on the payment of the lien upon it, was unquestionable, and the attempt to interfere with the exercise of such a right would be wholly unwarranted. The equitable interest in a judgment may be assigned by a delivery of the execution. (*Dunn* v. *Snell*, 15 *Mass.*, 481.) The equitable interest in a chose in action may be assigned, for a valuable consideration ; and it is not necessary that the assignment should be in writing. (*Parsons on Cont.*, *vol.* 1, *p.* 197, *and cases cited.*) And if the person seeking to enforce a demand have the legal or equitable title, if he have the whole interest, he may maintain an action. (*Hastings* v. *McKinley*, 1 *E. D. Smith*, 277.) The assignment was accompanied by a delivery to the plaintiff of the evidence of the contract between Van Dyke and the assignor, so far as it could be. The correspondence between Van Dyke and Stout furnished the proof of the possession of the stock by the former as collateral, and his assent to the transfer in accordance with the arrangement made by the latter ; and this was equivalent to the delivery of an execution or contract.

The conclusion which must follow these views is, that the dismissal of the complaint was erroneous. The defendant Onderdonk was a wrongdoer, and was not, under the circumstances, in a position, as already suggested, to question the plaintiff's right. He had acted in contravention of his trust to Van Dyke and his *quasi* trust to Stout and to the plaintiff, whose interests he knew and disregarded.

I think the judgment should be reversed.

Judgment reversed.

[FIRST DEPARTMENT, GENERAL TERM at New York, November, 1873. *Ingraham* and *Brady*, Justices.]