A. J. MATHONICAN V. SCOTT & BALDWIN ET AL.

No. 216.

1. **Venue—Crime as Cause of Action.**

An agent of money lenders and brokers who was furnished with funds to be delivered to a creditor of the firm, having failed to deliver the money, is not liable to said creditor under section 8 of article 1198 of the Revised Statutes. If the crime was embezzlement, it was not against the creditor but against the firm. Besides, the mere failure to pay over of itself does not show a crime against the firm, it not appearing that the money had been appropriated or otherwise disposed of ............................................ 398

2. **Venue—Liability for Debt of Another.**

When one, for a valuable consideration, agrees with another to pay the debt of that other person to a third person, such agreement inures to the benefit of the third party. Upon default in such payment the creditor may join both the original debtor and the party promising in one suit, and residence of one will carry jurisdiction against the others......................... 400

CERTIFIED QUESTIONS from Court of Civil Appeals for Fifth District, in an appeal from Hunt County.

*B. F. Looney,* for appellant.

*Perkins, Gilbert & Perkins,* for appellees.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fifth Supreme Judicial District has certified to this court the following statement and questions in the above cause:

"Scott & Baldwin, a firm composed of D. H. Scott and B. J. Baldwin, Jr., were engaged in business in Paris, Lamar County, Texas, and each of the members resided in that county. The firm did a real estate, abstract, and loan business; they bought and sold notes and other securities, and negotiated loans. While their business was in Paris, Lamar County, Texas, they had agents in other counties, among them an agent in Hunt County, who was authorized to solicit and secure business for them in the way of applications for loans, the negotiation and sale of notes and other securities, and to collect and pay over money for them.

"G. E. Scott was such agent of Scott & Baldwin in Hunt County, and resided there. He had authority to solicit and obtain applications for loans, the negotiation of notes and other securities, and to collect and pay over money for Scott & Baldwin. All such applications were acted upon by Scott & Baldwin at their office in Paris, and there accepted or refused.

"J. A. Mathonican, who resided in Hunt County, being desirous of selling a vendor's lien note held and owned by him, made a written application for that purpose to Scott & Baldwin, through their agent, G. E. Scott. G. E. Scott took the application and note in person to Scott & Baldwin, at Paris, Texas; they accepted the proposition made in the application, and G. E. Scott telegraphed Mathonican to that effect. The money was paid over to G. E. Scott by Scott & Baldwin, to be by him paid to Mathonican; that is, he had money of theirs in his hands, which they directed to be so paid. G. E. Scott delivered the note and application to Scott & Baldwin, which they retained. G. E. Scott, it is alleged, failed to pay over the money to Mathonican, converting it to his own use. Mathonican brought this suit in Hunt County against G. E. Scott and Scott & Baldwin, setting out the facts, and prayed for a judgment for the money or the recovery of his note. Scott & Baldwin pleaded in abatement their privilege to be sued in Lamar County, the county of their residence, and the court below sustained the plea.

"Question 1. Under the facts above stated, was G. E. Scott personally liable, so as to give jurisdiction to the court in Hunt County over

Scott & Baldwin, under section 4, article 1198, Sayles' Revised Statutes?

"Question 2. Were the acts of G. E. Scott, as agent, of such a character as to give jurisdiction over his principals, Scott & Baldwin, to the County Court of Hunt County, under section 8, article 1198, Sayles' Revised Statutes."

We will reply to the second question first. The facts stated do not show a crime, that is, embezzlement; for it may be that, as to Scott & Baldwin, G. E. Scott still holds the money as their agent. Or if appropriated to his own use, it may have been done under circumstances which would not constitute a criminal act. If, however, it be admitted that he embezzled the money in his possession, it was not the money of Mathonican, and he could not maintain a suit against G. E. Scott for that act as a crime.

We understand the first question to embrace two propositions: 1. Has Mathonican a right of action against G. E. Scott for the money due him from Scott & Baldwin on the sale of the note? 2. If so, can Mathonican join G. E. Scott and Scott & Baldwin as defendants in a suit for the recovery of the money? If they can be joined, it follows as a matter of course that they may be sued in Hunt County, the residence of G. E. Scott. Rev. Stats., art. 1198, sec. 4.

By the purchase of the note from Mathonican, Scott & Baldwin became indebted to him in the price agreed to be paid. When G. E. Scott undertook with Scott & Baldwin to pay the money in his hands to Mathonican, he, G. E. Scott, became liable to Mathonican for that debt; his undertaking inured to the benefit of Mathonican.

It is the settled rule of this court, and of most of the courts of the American States, that when one for a valuable consideration agrees with another to pay the debt of that other person to a third person, such agreement inures to the benefit of the third party, who may maintain an action thereon. Zacharie v. Bryan, 2 Texas, 274; Monroe v. Buchanan, 27 Texas, 248; Tel. Co. v. Adams, 75 Texas, 531; Vanmeter v. Vanmeter, 3 Gratt., 148; Miller v. Billingsley, 41 Ind., 489; Putman v. Field, 103 Mass., 556; Donkerly v. Levy, 38 Mich., 54; Canal Co. v. Bank, 4 Denio, 97; Crane v. Onderdonk, 67 Barb., 47; Schemerhorn v. Vanderheyden, 1 Johns. (N. Y.), 159; Arnold v. Lyman, 17 Mass., 400; Burr v. Beers, 24 N. Y., 178; Robbins v. Ayers, 10 Mo., 538.

In Zacharie v. Bryan, cited above, a purchasing agent for the Republic of Texas had given to plaintiff a draft upon Bryan as agent of that government, which he accepted as such agent. Afterwards Bryan settled his accounts with the government, and by resolution of the Congress of the Republic drafts were issued to defendant to pay this as well as other claims, which Bryan sold or otherwise disposed of.

Upon allegation of the facts in the petition demurrer was filed, and sustained by the court. The Supreme Court held that Bryan was not liable by reason of his acceptance of the draft as agent, but that when he disposed of them to his own use he became liable for the debt which should have been paid out of the proceeds, as for money received to the use of the plaintiff. That case is fairly in point as authority in this case. G. E. Scott received the note from Mathonican and carried it in person to Scott & Baldwin, with a proposition from Mathonican to sell it to them, and it was accepted, which fact G. E. Scott telegraphed to Mathonican. Scott & Baldwin having funds in the hands of their agent, G. E. Scott, directed him to pay the amount to Mathonican; and from all the facts it is a fair conclusion that he then undertook to make the payment.

Crane v. Onderdonk, supra, was defended upon the ground presented here, that the agent was not liable to plaintiff. In that case certain parties were indebted to Vandyke, who held as collateral to secure the debt 600 shares of stock, which Vandyke agreed to transfer to Crane, who was to furnish the money to discharge that debt and to take the stock. Vandyke gave Onderdonk a power of attorney authorizing him to transfer the stock to Crane upon payment of the debt. Onderdonk transferred the stock to himself and another, and claimed that Crane had no right of action against him; but the court held him liable to recovery by Crane.

Miller v. Billingsly, before cited, was a case in which the defendant Miller received from one Hayes a draft for $1000, with instructions to collect it and pay to the drawer $100, to another party $100, and to pay over to Billingsly $500, retaining the balance as a loan. Hayes and Billingsly were half-brothers, and Hayes instructed Miller to tell Billingsly that it was a gift from him. Miller collected the money on the draft and paid all but Billingsly, who never knew of his having it for several years, and when he did learn it, Miller refused to pay it over. Billingsly sued, and Miller set up the defense that Billingsly had no right of action against him for want of any privity of contract; but the court held that he was liable, on his undertaking with Hayes, to be sued by Billingsly. In that case Miller became the agent of Hayes to deliver the money to Billingsly.

The liability of Scott rests not upon his agency, but upon his undertaking with Scott & Baldwin to pay their debt to Mathonican. The fact that the money was furnished by Scott & Baldwin, that is, he was directed to pay it out of their money in his hands, does not change his obligation to Mathonican. In fact, in every such case where one agrees with another to pay the debt of the latter to a third person, if there is a valuable consideration, the money or its equivalent is furnished by the original debtor.

Scott & Baldwin owed to Mathonican the price for which they purchased the note, and G. E. Scott was liable to plaintiff for the same debt. They could be sued jointly in any county in which either of the defendants resided. Clegg v. Varnell, 18 Texas, 294; Love v. Keowne, 58 Texas, 191; Bank v. Investment Co. et al., 74 Texas, 421. The first two of the cases last cited announce the general principles upon which the joinder of the defendants in a suit like this can be maintained, and the case of Bank v. Investment Company is directly in point. In that case the Texas Investment Company had made a note payable to a certain party which had been indorsed by different persons. The "Texas Investment Company, Limited," a different corporation, bought the assets of the Texas Investment Company, and agreed to pay its debts. Suit was brought, alleging that the directors of the latter company squandered the assets of the old company, leaving its debts unpaid. The Texas Investment Company, Limited, was joined on account of its agreement to pay the debts of the first named company, and the directors of that corporation were made parties, as well as the indorsers upon the note. The petition was excepted to for multifariousness. It was held by the court that the defendants were properly joined, in so far as those defendants were bound to pay the note sued upon. Judge Gaines, delivering the opinion, said: "The suit here in the main is for the recovery of one debt only, and a judgment is sought against several parties, who have, as is alleged, made themselves successively liable for its payment. It is true, as urged by counsel for appellees, that numerous issues are presented, and that the labors of the court in disposing of the litigation are thereby greatly increased. We do not understand that this is an objection which can be urged under our system of practice. From an early day our courts have encouraged the bringing of all parties interested in the subject matter of a litigation before the court and determining their rights in one action. We are of opinion, therefore, that as to the maker and the indorsers of the note, 'The Texas Investment Company, Limited,' the directors of that company, and all parties who are alleged to have participated in the misapplication of the funds of the old company with a knowledge of the facts, the causes of action were properly joined in one suit." It was claimed that the Texas Investment Company, as maker, and the indorsers, as such, were liable; and that the Texas Investment Company, Limited, was liable for the note by its agreement to pay the debts of the first corporation, the maker; and further, that the directors of the new corporation, having squandered the assets of the old corporation, were also liable. All were liable for the same note upon distinct grounds, yet they were held to be properly joined in that suit.

It needs no argument to apply the clear statement of the law quoted from Bank v. Investment Company to the facts of this case.

There can be no doubt that G. E. Scott and Scott & Baldwin, being liable to Mathonican, all the parties could be joined in one suit under our system.

Delivered December 17, 1894.