S. F. FONTAINE ET AL. v. L. NUSE.

Decided February 23, 1905.

**1.—Lien on Homestead—Deed of Trust—Assumption of Lien by Purchaser.**

Although a deed of trust upon a homestead, given as security for a promissory note, carries with it no lien, yet, where the homestead was afterwards sold, and the purchaser agreed to assume payment of the notes, reserving a corresponding amount out of the purchase money, and to accept the terms and covenants of the deed of trust purporting to create a lien, the assumption by the purchaser inured to the benefit of the holder of the notes, who could, upon the notes becoming due and remaining unpaid, enforce his lien.

**2.—Same—Same.**

The fact that, prior to the sale, the notes which the purchaser assumed were not a lien on the homestead, did not affect their new status created by the subsequent sale of the property.

**3.—Same—Verdict.**

A verdict finding "for a foreclosure of plaintiff's lien" was a finding that the lien existed.

**4.—Same—Foreclosure—Parties.**

Where the action was one to foreclose a lien on a homestead created by a

deed of trust given as security for certain promissory notes, and one who afterwards purchased the homestead, agreeing as part of the consideration to assume payment of the notes, was made party, there was no error in joining the wives of the seller and purchaser of the property, the judgment of foreclosure adjudging nothing against either personally.

Appeal from the District Court of Galveston. Tried below before Hon. Frank M. Spencer.

*A. B. Buetell* and *J. L. Darrouzet,* for appellants.—The court erred in not dismissing the case and refusing relief to either plaintiff or defendants, as soon as the evidence developed the facts that the note and deed of trust and contracts of March, 1897, were given to secure money borrowed by Hughes on his homestead from plaintiff, Nuse, during the time Hughes lived therein; and that the contracts of March, 1897, contravened the public policy as to the preservation of the homesteads; the public policy as to the pleading of the statutes of limitations in bar of actions, and the public policy as to perpetuities, and the entire evidence clearly showing that said contracts of March, 1897, were mere subterfuges, intended to make valid the void note and deed of trust sued on. Constitution of Texas, art. 16, sec. 50; 7 Wait's Actions and Defenses, pp. 64, 65, 92; 3 Am. & Eng. Encyc. of Law (1st ed.), p. 872, sec. 49, p. 887, n. 2; 1 Parsons on Contracts, pp. 456, 457; Seligson v. Lewis, 65 Texas, 215; Wegner v. Biering, 65 Texas, 506; 7 Bouvier's Law Dictionary, p. 612; Beach on Modern Contracts, pp. 1884-1888.

*James B. & Chas. J. Stubbs* and *Wm. B. Lockhart,* for appellee.—The court did not err in holding that defendants, Fontaine and wife, in their contract of March 27, 1897, either granted a vendor's lien upon the property in the first place, or by their recognition of said lien and agreement to pay the debt, estopped themselves from disputing its validity. The deed of conveyance to S. F. Fontaine from Hughes and wife, accepted by him, contained and was an assumption by him of the note sued on and recognized it as an encumbrance upon the property. Mitchell v. Association, 49 S. W. Rep., 624; Michigan Loan Assn. v. Atterberry, 42 S. W. Rep., 569; Paddock v. Association, 36 S. W. Rep., 1008; Monroe v. Buchanan, 27 Texas, 241.

JAMES, CHIEF JUSTICE.—The suit was brought upon a note and to foreclose lien upon certain real property. The court directed the jury to return a verdict for plaintiff, Nuse, against defendants, C. H. Hughes and S. F. Fontaine, for the amount of the note with interest and attorney's fees, with a foreclosure of plaintiff's lien upon the property against all defendants. The other defendants were the wives of Hughes and Fontaine, and the trustee in a deed of trust purporting to secure the note.

The material facts are all undisputed. We shall here state them briefly.

On March 31, 1891, C. H. Hughes and his wife executed their notes, one for $1,000 due two years after date, and one for $3,000 due three years after date, payable to their own order and endorsed by them in blank. This was apparently for money borrowed from L. Nuse, to

whom the notes were delivered. At same time, to secure said notes, they executed a deed of trust to Robert G. Street as trustee, upon their homestead in Galveston, this being the property upon which the decree appealed from gave a foreclosure of lien.

On April 3, 1891, Hughes and wife sold this, their homestead, to S. F. Fontaine, who with his family moved upon it and have since occupied it as their home. The consideration for this purchase was $10,400, $6,400 paid in cash and (as expressed in the deed) "the further consideration of the assumption by said Sidney F. Fontaine of the payment of our two certain promissory notes, dated March 31, 1891, and of the terms and covenants of our deed of trust securing same on the property hereinafter described, one in the sum of $1,000 payable in two years after date, and the other in the sum of $3,000 payable in three years after date, both payable at Galveston, Texas, to the order of and endorsed by ourselves with 8 percent interest per annum from date 'til paid, payable semiannually." The covenants of warranty in this deed, state that the property is free and clear of all and every encumbrance excepting only the encumbrance aforesaid of $4,000.

Fontaine paid the first of the notes. In March, 1897, Hughes and wife executed a writing which recited that the property had been sold to Fontaine, that the latter had assumed to pay same, that he, Fontaine, desired further time and Hughes and wife promised to pay same on March 31, 1898, with privilege to March 31, 1899, and also waived limitation and recognized as in force the deed of trust.

And on March 27, 1897, Fontaine and his wife executed a similar writing reciting the execution and delivery of the note and deed of trust by Hughes and wife on March 31, 1891, that the property had been conveyed by Hughes and wife, that the purchaser assumed as part of the consideration for the deed, the payment of the note; that Fontaine and wife desired an extension, they therefore renewed and promised to pay the same on March 31, 1898, with privilege of another year, and to that end and purpose they perpetuated "as of original" said deed of trust and all its covenants, and bound themselves by the same as if executed by them, and declared the indebtedness to be a vendor's lien on this property and waived limitations.

"The deed of trust signed by Hughes and wife contains a provision that should they fail to pay taxes when due, or the premium of insurance upon the improvements, which it was agreed should be kept insured for not less than $4,000, that in either such event the indebtedness should at once mature and be foreclosed at the option of the holder and owner of the indebtedness, he also to have the option to pay such taxes and premiums, and such payments would bear interest at 8 percent from the date thereof until repaid. Plaintiff did not exercise the option to mature the debt.

Said deed of trust and two instruments above recited were duly executed and acknowledged by the makers thereof, the separate acknowledgments of the wives being in accordance with the statutes.

The debt sued on is due and unpaid, with interest from March 31, 1900, at 8 percent per annum, and the same has been sued upon, which, under the terms of the note, entitled plaintiff to 10 percent additional upon the aggregate of the principal and interest due on the note, mak-

ing a total on the 15th day of April, 1904, the date of decree, of $4,356. This suit was brought and filed on March 27, 1902."

The appeal is taken by Hughes and wife and Fontaine and wife.

*Opinion.*—There are several points presented by appellants, which, in order to dispose of them, require hardly more than mention. There are some that do not merit attention.

For example it is contended that the verdict which found "for a foreclosure of plaintiff's lien" was not a finding that a lien existed, and the court was not warranted by such verdict to decree foreclosure.

Another such contention is that the act of Hughes and wife in attempting to create a lien on their homestead, which the law declared null and void vitiated not only the lien, but also the personal obligation of Hughes to pay the money which was borrowed in the transaction. The contention is even more far reaching, for it is claimed that said attempt to encumber a homestead for a debt, vitiated also the assumption by Fontaine of such debt, and extended to and vitiated all the later writings and renewals, and that the court should for these reasons have promptly and summarily dismissed the suit.

Another is that the court erred in not dismissing from the case, upon demurrer, the wives of Hughes and Fontaine. How Mrs. Hughes can complain, after she and her husband had parted with the property, of a decree which adjudges nothing against her personally, we fail to see. Nor how anyone else was prejudiced by her retention as a party. No personal judgment was rendered against Mrs. Fontaine; if she had no interest that required her to be made a party, we fail to perceive how she or anyone else in the case could be prejudiced by the foreclosure. Certainly no error exists in this record, which would require a reversal or even a modification of the decree, by reason of their being kept in as parties and concluded by the foreclosure.

Another proposition is that there was no proof that plaintiff was the owner or legal holder of the note sued on, the point being, as stated in appellant's brief, that the note can not be considered as evidence, for it was not filed or surrendered until after the term at which the case was tried. This point is made in the absence of any certificate or other expression of the court on the subject, and in the face of the record which shows that the note was produced by plaintiff and used as evidence on the trial.

Without extending the list of propositions of this nature, we proceed to state reasons why the judgment should be affirmed.

It is true the homestead of Hughes and wife was not bound by the deed of trust by means of which they attempted to give a lien thereon. The transaction simply served to make Hughes the debtor of plaintiff for the amount of the notes. Fontaine, when he bought the property assumed to pay these notes as a part of its purchase price, withholding that much for that purpose. As between him and Hughes and wife there could be no question, it seems to us, that if nothing had been said in the deed about a lien in connection with this unpaid purchase money, Hughes would have been entitled for his own protection against the debt, to follow the property with an implied vendor's lien to that extent. But we need not resort to any special reasoning on the subject, because the

recitals in the deed under which Fontaine took the property, establish not only that he assumed to pay these notes, reserving a corresponding amount of the purchase money for the purpose, but that the transaction was made on the basis of and contemplated a lien against the property to secure the payment of said notes.

The assumption by Fontaine, although made to Hughes and wife, inured to the benefit of the holder of the notes who could maintain an action thereon. (Methonican v. Scott, 87 Texas, 396.) This right of the third party necessarily extends to the assertion of the claim as fully and as adequately as it could have been by the original debtor. In other words it being clear, under the facts of the case, that if Hughes had to pay the notes, he could have sued Fontaine and asserted a lien on the property superior to any homestead right in Fontaine and wife, the holder of the note, to whose benefit Fontaine's assumption inured, could do likewise.

The trial judge in the conclusions of law which he filed stated: "I can discern no difference in principle between the assumption by Fontaine of the debt due by Hughes as a part of the consideration for the sale of the property, and the execution of two notes in like terms and amounts to Hughes as a part of the consideration. A like result follows each condition. In one case the amount is paid to Hughes through his creditor Nuse, and in the other it is paid directly to himself." This aptly presents the matter as it really existed. Nuse would have been in no better position than he was, in reference to recourse against the property had Fontaine given such notes directly to Hughes and wife, and the latter had endorsed them to Nuse.

There was nothing whatever of illegality in the debt of Hughes to plaintiff. There was none in the debt contracted by Fontaine for the unpaid part of the purchase money. The fact that prior to the sale, the notes he assumed were not a lien on the property, did not affect the new status of those notes, which was created in the subsequent legitimate transaction of the sale of the property. They are entitled to stand on the footing they received in the sale to Fontaine independent of any homestead consideration that had existed in favor of Hughes and wife. After Hughes and wife sold the property, Fontaine was the only person who was interested in denying the existence of a lien by virtue of those notes, and he, by his own act in acquiring the property, charged it with them and as part of the purchase money.

The renewals by Hughes and Fontaine dispose of any question of limitations. Affirmed.

*Affirmed.*

Writ of error refused.