### KNOX et al. v. ROBBINS.

(Court of Civil Appeals of Texas. Galveston. Nov. 19, 1912. Rehearing Denied Dec. 19, 1912.)

1. CARRIERS (§ 318*)—MASTER AND SERVANT (§§ 276, 280, 281*)—LOGGING RAILROADS—INJURY TO EMPLOYÉ — EVIDENCE — SUFFICIENCY.

In an action for injury to a lumber company's employé while riding on a logging train to his work in the woods, evidence *held* to warrant findings 'that he was rightfully on the train; that the accident was proximately caused by the railway company's negligence in allowing an obstruction to be and remain on the track, and the lumber company's concurrent negligence in failing to keep a proper lookout to discover the obstruction; and that plaintiff did not assume the risk, and was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318;* Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976, 981–986; Dec. Dig. §§ 276, 280, 281.*]

2. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVENESS.

Seven thousand five hundred dollars is not excessive recovery for injuries to a logging employé in derailment of a logging train, where he became insane as a result thereof.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

3. EVIDENCE (§ 127*)—DECLARATION BY INJURED PERSON—ADMISSIBILITY.

In a personal injury action, it was not error to admit testimony of complaints of existing pain made by plaintiff to witnesses, though he was then insane, especially where there was evidence tending to show that his insanity was limited to one delusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 377, 382; Dec. Dig. § 127.*]

4. APPEAL AND ERROR (§ 742*)—REVIEW—OBJECTIONS NOT ASSIGNED.

A proposition under an assignment of error presenting an objection to testimony not raised by the assignment cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. TRIAL (§ 89*)—EVIDENCE—STRIKING OUT.

In a personal injury action, it was not error to strike testimony that plaintiff stated to witness that a certain scar was produced by a stab received in a difficulty several years before, on plaintiff's counsel's objection that such statement was made while plaintiff was insane, where there was no claim that the particular wound was produced in the accident sued on.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 228–234; Dec. Dig. § 89.*]

6. EVIDENCE (§ 317*)—HEARSAY TESTIMONY.

In an action for injury to an employé in the derailment of a logging train, testimony that plaintiff's coemployé told witness after the wreck that they had orders not to ride on the train was properly excluded as being hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

7. EVIDENCE (§ 322*)—HEARSAY TESTIMONY—SANITY OF PARTY.

In an action for personal injury to plaintiff claimed to have rendered him insane, it was proper to exclude testimony offered by defendant that "everybody talked about" plaintiff's insanity "more or less," where witness testified to his own opinion, acquired while plaintiff worked with him, and where witness in referring to "everybody" meant the persons

---

who worked at the same place with plaintiff and witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1203–1213; Dec. Dig. § 322.*]

8. APPEAL AND ERROR (§ 742*)—REVIEW—ASSIGNMENT OF ERROR—SUFFICIENCY.

So far as the propositions under an assignment of error to the giving of an instruction state objections not embraced in the assignment of error, they will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

9. MASTER AND SERVANT (§ 295*)—LOGGING RAILROADS—INJURY TO EMPLOYÉ—INSTRUCTIONS.

In an action for injury to an employé while riding on a logging train, caused by the derailment thereof, it was proper to instruct that, if plaintiff "took up a position more dangerous than some other parts of the train where he was permitted to ride, he should be held to have assumed the risk of the more dangerous position, yet he did not assume thereby any risk of danger resulting from and proximately caused by the negligence of defendants," etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

10. CARRIERS (§ 321*) — INJURIES — INSTRUCTIONS.

In an action for injury to a lumber company's employé while riding on a logging train, which was derailed, it was not error to instruct that, if the defendant railway company contracted with defendant lumber company to transport plaintiff with others on the train for a consideration paid by the lumber company, plaintiff was a passenger and entitled to exercise of that degree of care required in the carriage of passengers in the kind of vehicle used, etc.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1337, 1343; Dec. Dig. § 321.*]

11. DAMAGES (§ 216*)—PERSONAL INJURY—INSTRUCTIONS—DOUBLE DAMAGES.

In a personal injury action, an instruction that the jury might consider any time lost by plaintiff as well as any loss of time which he would suffer in the future, and that, if the jury found that plaintiff was insane as the proximate result of such injuries, in estimating his damages the jury should consider the fact of the insanity so far as it affects his earning power, was not erroneous as authorizing double damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

12. APPEAL AND ERROR (§ 759*)—ASSIGNMENTS OF ERROR—SUFFICIENCY OF PRESENTATION.

It is a valid objection to the consideration of an assignment of error that only part of it is copied in the brief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3094; Dec. Dig. § 759.*]

13. MASTER AND SERVANT (§ 276*)—INJURY TO EMPLOYÉ—EVIDENCE—SUFFICIENCY.

In an action for injury to a lumber company's employé while riding on a logging train, which was derailed, evidence *held* to warrant a finding that the accident proximately caused his insanity.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

14. APPEAL AND ERROR (§ 742*) — ASSIGNMENTS OF ERROR—SUFFICIENCY OF PRESENTATION.

Assignments of error cannot be considered when the only statement under them is, "See statement under 15th assignment of error," if that statement refers to a question in no way relating to the questions presented by the particular. assignments.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

15. MASTER AND SERVANT (§ 289*)—LOGGING RAILROADS—INJURY TO EMPLOYÉ—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

In an action for injury to a lumber company's employé while riding on a logging train, which was derailed, *held*, under the evidence, a jury question whether plaintiff was guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

Appeal from District Court, Polk County; L. B. Hightower, Judge.

Action by T. E. Robbins against W. H. Knox and others. Judgment for plaintiff, and defendants appeal. Affirmed.

F. Campbell, J. Holshousen, and J. L. Manry, all of Livingston, Mantooth & Collins, of Lufkin, and A. L. Jackson, of Houston, for appellants. Dean, Humphrey & Powell, of Huntsville, and J. C. Feagin, of Livingston, for appellee.

REESE, J. This suit was originally instituted by T. E. Robbins against the Livingston & Southeastern Railway Company and the partnership firm of W. H. Knox and Hiram Knox, doing a sawmilling business under the firm name of the Knox Lumber Company. The plaintiff Robbins having been adjudged a lunatic, Frank McCall was allowed to come in and prosecute the suit as next friend of said Robbins. A trial with a jury resulted in a verdict and judgment in favor of the plaintiff for $7,500 against both defendants, from which they prosecute this appeal. In substance the allegations of the petition are as follows:

On and prior to July 21, 1909, the defendant Lumber Company owned and operated a sawmill and planing mill located at the station of Knox, or Soda, in Polk county, Tex., about seven miles from the town of Livingston, a station on the railroad of the defendant Livingston & Southeastern Railway Company, and the Lumber Company owned large bodies of timber in Polk county, some of which was located at a great distance from its mill, and away from the track of the defendant Railway Company. The defendant Railway Company was a private railroad corporation, and it owned and operated a line of railroad extending from the town of Livingston to the station of Knox, or Soda, at which the mill was situated. The defendants W. H. Knox and Hiram Knox, being the constituent members of the partnership under the name of the Knox Lumber Company, also owned the majority of the stock in the defendant Railway Company. That the defendant Lumber Company, for the purposes of facilitating it in the trans-

portation of its timber from its distant tracts, had built a tram railroad, constructed according to the standard of the ordinary railroad, and which extended from the junction with the defendant Railway Company's tracks a considerable distance to the timber lands of the Lumber Company. That on and prior to July 21, 1909, the defendants, for their mutual benefit and advantage, had some sort of a contract, the terms of which were unknown to plaintiff, under which the defendant Lumber Company cut its timbers and transported same over its tram railroad to the junction of the defendant Railway Company's track, and that thence the defendants transported said timbers to the Lumber Company's sawmill at the town of Knox by means of logging cars. That it was understood between plaintiff and the defendant Lumber Company at the time of his employment that one or both of the defendant companies would transport him upon cars over the railroad of defendant Railway Company, and over the tram railway between the place of his residence at or near said mill and the place of his work. That while thus in the employment of the defendant Lumber Company, and under contract with it to saw logs in the woods for said company, the plaintiff and other employés, in accordance with the said agreement, and with the consent and acquiescence of defendant, boarded a logging train at the station of Knox, which was made up of "an engine, tender, and three logging cars, described as aforesaid, and which left said mill for the purpose of carrying the plaintiff and the other employés of the defendant Lumber Company to the woods, where they were to resume their service for defendant Lumber Company," etc., and that plaintiff thereby became a passenger on said cars, and that "if the plaintiff is mistaken in his averment that when riding on said logging train in going to and returning from his work he was a passenger thereon, and if he is mistaken in his averment that the defendants, and each of them, owed to him the highest degree of care to safely transport him to and from his work while on said cars, the defendants, and each of them, nevertheless, owed plaintiff the duty to transport him in safety while on said car, both going to and returning from his place of work," etc. That the said train consisted of an engine and tender in front of which were three logging cars which were pushed out in front of the engine. That the relations between the defendants were of such a character that plaintiff did not know and could not ascertain whether the trainmen in charge of said logging car and of the train of which they were a part were in the employ of the defendant Railway Company or of the defendant Lumber Company, nor could he ascertain whether the train and cars belonged to the one or the other of the defendants, but he alleged

that such trainmen were in the employ of both and each of said defendants, and that the cars and train were being operated for the mutual benefit of both of the defendants. That plaintiff, in taking passage on said train, took his seat on one of the couplings of the frame of the logging car that was attached to the tender, and that while the train was going at a rapid rate of speed at a point on the track of the defendant Railway Company some of the cars encountered an obstruction on the track and became derailed, and the plaintiff, in order to avoid apparent danger, jumped from the car that he was sitting on, and was seriously and permanently injured, alleging that such injury resulted from negligence on the part of the defendants in the following particulars, substantially: (1) That defendants had caused or permitted some obstruction to be placed and left on the railroad track; (2) that defendants had failed to properly inspect the track to discover and remove the obstruction; (3) that the track and roadbed at the point of the occurrence were in an unsafe condition; (4) that the defendants had failed to have the engine and train properly equipped with air brakes, so as to stop the train quickly upon discovery of the obstruction; (5) that the rate of speed at which the train was running was excessive; (6) that the defendants failed to keep a proper lookout for obstructions.

Among other injuries alleged to have been suffered by the said Robbins, it is alleged that as a result of said injuries he has become insane.

Defendants answered by (1) general denial; (2) special denials of various allegations in the petition; (3) a special plea that plaintiff was not authorized to ride on the logging car occupied by him, but that plaintiff and others were strictly precluded by rule of the defendant Lumber Company from riding in such position, and were not permitted to ride except on the caboose or tender provided for that purpose; (4) special plea that in riding upon the logging car plaintiff was a trespasser, assuming the risk of the danger, and that defendants owed him no affirmative duty, except to avoid intentional injury, and that plaintiff was guilty of contributory negligence in occupying such position; (5) that plaintiff was guilty of contributory negligence, in that he unnecessarily and carelessly jumped from his position on the car, whereas, if he had remained thereon, he would have received no injury; (6) special plea that the plaintiff had full knowledge that riding on the logging car involved more danger than riding on the tender, and had been so admonished, notwithstanding which he voluntarily occupied the more dangerous position, and thereby assumed the risk, and thereby also was guilty of negligence precluding recovery; (7) special denial that plaintiff's alleged insanity re-

sulted from the injuries complained of, and averring that such insanity was due to venereal diseases, and was hereditary.

The facts are substantially as follows: At the time of the accident, which occurred July 21, 1909, the appellee Robbins was in the employment of the Knox Lumber Company, engaged in getting out timber for its sawmill, which was located at the station of Knox (or Soda) on the line of the Livingston & Southeastern Railway about seven miles from the town of Livingston, one of the termini of said railroad. The Railway Company owned and operated a line of railway running from Livingston to Knox. W. H. Knox and Hiram Knox, operating as a partnership under the firm name of the Knox Lumber Company, owned and operated the sawmill at the town of Knox. The Lumber Company, for the purpose of reaching its timber in the woods, had constructed a tram road from a junction with the said railroad out into the woods. W. H. Knox and his son, Hiram Knox, owned about nine-tenths of the stock of the Railway Company and W. H. Knox was its president. There was a contract between the Lumber Company and the Railway Company by the terms of which the Railway Company were to transport the logs from the woods to the Lumber Company's mill at $1 per thousand feet, and for this compensation the Railway Company was also to carry the employés of the Lumber Company who worked in the woods to and from their place of work. For this purpose the Railway Company had for use a caboose attached to the engine or logging cars, but some month or more before the accident in question this caboose had been out of use, having become unfit for use on account of a wreck, and during this time the men had to ride either on the logging cars or the engine or tender. The evidence was conflicting as to the number of men who had to be carried from their work at the time of the accident in question. Some of the witnesses place the number as high as 40 or 50; and it was in evidence that this number could not be accommodated on the engine and tender, which also had to carry wood for the engine, and had no accommodations for seats for the men. At the time of the accident the engine was pushing ahead of it three empty logging cars (skeleton cars without floor, but having only bolsters for holding the logs). Appellee Robbins was riding on one of the logging cars. The train was running anywhere from 18 to 25 miles an hour when the trucks of the forward car struck the end of a loose railroad rail, lying on or by the side of the track, derailing the car and wrecking the train. Robbins jumped when the accident occurred, and was caught under one of the cars, and sustained substantially the injuries alleged in the petition. About a year after the accident, he became insane, and was at the time of the

151 S.W.—72

trial confined in the State Asylum at Austin as a lunatic. The evidence authorizes the conclusion that the insanity was proximately caused by the injuries received by him as aforesaid. There was evidence which tended to show that the insanity was of date anterior to the accident, and was brought on by other causes or was hereditary, but the jury evidently found otherwise, and their finding is sufficiently supported by the evidence.

A much contested issue was as to whether the men engaged in the operation of the train at the time were in the employ of the Railway Company or the Lumber Company. These men were the engineer, fireman, and brakeman. Without stating such evidence here, we find that the finding of the jury, such finding being necessary to support the verdict against the Lumber Company under the charge of the court, that these men were acting at the time in the employment and were the servants either of the Lumber Company alone, or in the employment of both the Lumber Company and the Railway Company in operating the engine and cars, is sufficiently supported by the evidence and we accordingly so find.

[1, 2] Another much contested issue was whether appellee was acting in violation of a rule or order of the Railway Company in riding on the logging car, instead of on the engine or tender. We find that, if there was such rule generally, it was, especially after the company ceased to use the caboose, habitually disregarded, and that it was impracticable to obey it, as the accommodations on the engine and tender were insufficient for the transportation of all the employés who were required to be so carried, and that this was or must have been known to the officers of the Railway Company. We find that appellee was rightfully upon the logging car and was riding thereon upon the contract between the Lumber Company and the Railway Company heretofore referred to, and under an implied contract between the Lumber Company and appellee that he should be thus carried. The accident referred to was proximately caused by the negligence of the Railway Company in allowing the obstruction to be and remain upon the track, combined with the negligence of the servants of the Lumber Company, or of the Lumber Company and the Railway Company jointly, in failing to keep a proper lookout to discover such obstruction in time to prevent the accident, and in running the train at too great speed under the circumstances. We find that appellee was not guilty of contributory negligence in any of the particulars charged in the answer, nor did he assume the risk of the accident. The injuries received by appellee proximately caused by the accident fully justify the amount awarded him by the verdict and judgment.

[3] The first four assignments of error

present substantially the same question. The court admitted, over the objection of appellants, the testimony of certain witnesses that upon certain occasions appellee Robbins complained of pain in his back and head. As we understand the testimony, it was that the complaints were of present pain and suffering, and not, as the objection states, a statement of past suffering. These complaints were made some time after the injury. The real idea intended to be conveyed by the testimony is that what was said by appellee was an expression of present pain and suffering then existing at the time the complaint was made. Such testimony was admissible. Railway Co. v. Barron, 78 Tex. 421, 14 S. W. 698; Wheeler v. Railway Co., 91 Tex. 356, 43 S. W. 876. The further objection was made that appellee was at the time insane. We do not think that this rendered these voluntary exclamations or expressions of present suffering inadmissible, especially in view of the testimony of the witnesses who testified as to appellee's insanity while in the asylum that he talked very intelligently, except upon one subject, that he imagined he had been resurrected at the time of the accident, as stated by one medical witness who examined appellee at the instance of appellants, otherwise he talked entirely rationally. We think expressions of present pain by such a person would fall under the general rule stated by the authorities cited.

[4] What we have said is sufficient to dispose also of the fifth assignment of error, presenting objections to certain testimony. The additional objection to such testimony set out in the second proposition under this assignment, that the expressions of pain were made after this suit was brought, was not made to the testimony as set out in the assignment, and cannot be considered. The proposition is supported by a dictum in Railway Co. v. Kuehn, 2 Tex. Civ. App. 210, 21 S. W. 58, the soundness of which we doubt as applicable to this testimony. Jackson v. M., K. & T. Ry. Co., 23 Tex. Civ. App. 319, 55 S. W. 376. But it is not necessary to decide the question, as it is not presented by the assignment.

[5] Dr. Harlan Trask examined appellee while in the asylum at Austin at the request of appellants. Testifying about the result of this examination, he said that he found a scar on his back on or near his shoulder blade which was made by a cut with a sharp instrument. The witness further testified that appellee stated to him that this scar was produced by a stab inflicted upon him "in a racket" three or four years before. Upon objection by appellee's counsel that this latter statement was made while he was insane, it was stricken out, to which appellants objected, and the ruling is made the basis of the sixth assignment of error. As showing the materiality of this testi-

mony, it is contended that appellee by his pleadings and by the evidence of his wife, Mintie Robbins, claimed that this scar was the result of an injury received by him in the wreck referred to. This is entirely erroneous. Mintie Robbins, on the contrary, testified particularly with reference to this scar that it was the result of a stab wound inflicted by one Elisha Lewis, her cousin, several years before this accident and injury. None of the testimony for appellee indicates that this wound was produced by, or at the time of, the accident referred to, and the testimony of Dr. Trask which was stricken out by the court was utterly immaterial. The record, in fact, leaves us at a loss to understand why appellee's counsel objected to it. The statement is made in appellants' brief that appellee stated to Dr. Trask that this scar "and enlargement in the region of the spine" had resulted from a stabbing in a personal difficulty. The words quoted are an enlargement upon the testimony of the witness not justified by the record. The assignment is overruled.

[6] There was no error in sustaining the objection of appellee to the testimony sought to be elicited from the witness Moye, as set out in the seventh assignment of error, that the employés of appellant told him after the wreck that they had orders not to ride on the logging cars. The objection that the testimony was hearsay was properly sustained. The contention stated in the proposition and brief that the testimony was admissible on cross-examination by way of impeachment or to test and analyze the testimony of the witness is not embraced in the assignment, but could not be sustained if it had been.

[7] There was no error in striking out the answer of the witness Saxon, speaking with reference to the insanity of appellee before the accident and injury in question, that "everybody talked about it more or less." The witness was testifying to his own opinion acquired while appellee worked at a sawmill at Bedford, and referred by "everybody" to the persons working at said mill. The testimony was objected to as hearsay. It seems to be settled by the authorities that general reputation is inadmissible to establish insanity. 2 Wigmore, § 1621; Ellis v. State, 33 Tex. Cr. R. 86, 24 S. W. 894; 7 Encyc. Ev. 477. None of these persons comprising "everybody" at this mill, unless experts in such matters as insanity, would have been allowed to give his opinion as to appellee's insanity, except in connection with a statement of the facts and circumstances upon which such opinion was based. Brown v. Mitchell, 88 Tex. 363, 31 S. W. 621, 36 L. R. A. 64. This testimony, if admissible, brings before the jury the opinion of all these persons that appellee was at the time referred to insane without inquiry as to their means of knowledge or evidence as to the facts and

circumstances upon which such opinion is based. We do not think this would be proper.

By the ninth assignment of error appellants complain of the refusal of the court to give to the jury a special charge requested by them that there was no evidence to authorize a verdict against the Knox Lumber Company, or W. H. and Hiram Knox, and that they should only consider the evidence as to the Livingston Southeastern Railway Company. Under this assignment, the following proposition is stated: "There being no evidence that the railroad at the point of derailment belonged to or was controlled by the Lumber Company, or that those operating the locomotive and cars were the servants of the Lumber Company, performing its immediate service, or that the plaintiff was injured as a result of failure on the part of the Lumber Company to perform any substantive duty to him incident to the relation of master and servant, no liability was shown on the part of the Lumber Company or W. H. Knox or Hiram Knox, as members of that partnership, and these defendants were entitled to the peremptory instruction." The accident occurred on the line of railway of the defendant Railway Company. The engine and cars also belonged to the Railway Company. The contract between the Railway Company and the Lumber Company required the Railway Company to carry the men to and from their homes to their places of work in the woods over the Railway Company's line to the junction with the tram of the Lumber Company, and thence over the tram to the front. It thus entered into and became a part of appellee's contract of employment that he was thus to be carried to and from his work daily as was being done at the time he was hurt. The train was a logging train purely, and was engaged solely in the business. The train crew consisted of Alexander, the engineer, Pete Bailey, the brakeman, and Tom Stutts, the fireman. Alexander testified: "I was running the engine for the Knox Lumber Company. Yes, sir; I suppose they own the business at Knox or Soda. I ran the mill engine there about two weeks, something like that, and ran the locomotive. It was a logging train. I went under Mr. Winger's order when I was in the woods (Winger was the woods foreman of the Lumber Company), and, when I was at the mill, I went under orders of Mr. Knox. Mr. Winger was on the car at the time of the wreck. Yes, sir; I was in the employment of the Knox Lumber Company. I am working for the Knox Lumber Company now." Pete Bailey testified. "I am working for the Knox Lumber Company as conductor on his train since February 7th last. Before that I was braking on the logging train. I was braking on the logging train in 1909, when Tim Robbins got hurt. Before that, I worked on the loading crew there

sometimes, but most of the time on the train. Alexander and Stutts were the engineer and fireman, and I was brakeman." Tom Stutts testified: "I lived at Knox or Soda on July 21, 1909, and was firing a locomotive steam engine for the Knox Lumber Company at that place at that time." This was the day of the wreck.

The evidence does indeed disclose that the Railway Company and the Lumber Company were so closely and intimately connected in ownership and management as to be, so far as the operation of their business was concerned, practically one concern. Still they were distinct individuals, and neither could legally be made liable for the negligent act solely attributable to the other. We may admit that the Lumber Company would not be liable in this case if the train was being operated over the line of the Railway Company, by its own agents and servants, carrying appellee to or from his work, under the terms of its contract with the Lumber Company. But, whatever the terms of that contract may be, there was evidence, which we have quoted, sufficient, if true, to show that the engine and cars were being operated by the servants of the Lumber Company and under the direction of its woods foreman, one Winger. Every member of the crew, engineer, fireman, and brakeman, so testified. If these men did not mean to so state, if in fact the relationship of the two companies was so close that they might have been mistaken about this, or did not know, some attempt should have been made to have them explain. But the testimony is in the record as quoted, without qualification, and we cannot assume that the witnesses did not mean what they have so clearly stated. If it be true that the train crew were operating the engine and cars as employés of the Lumber Company, which might very well have been the case, considering the character of the service in which they were engaged, then the evidence is sufficient to authorize the finding that the accident was the proximate result of the combined negligence of the Railway Company in allowing the obstruction to be and remain on the track, and of those engaged in operating the engine and cars in running at a dangerous rate of speed, and in failing to keep a proper lookout to discover the obstruction on the tracks in time to avoid the accident. The train was being operated with the cars in front, and one witness testified that the speed was 30 miles an hour. We think the evidence as to the liability of the Lumber Company was sufficient to raise an issue for the jury, and the court did not err in refusing the requested charge.

Appellant in the tenth assignment complains of the fifth paragraph of the court's charge. This paragraph contains substantially the entire charge of the court upon the question of the liability of both defend-

ants, and covers two entire pages of appellants' brief. Six separate propositions are stated under the assignment. The assignment itself states the following grounds of objections to the charge: "Said charge is erroneous, in that it assumes that defendants consented to and acquiesced in the act of the plaintiff in riding upon the logging cars, because 'there was not a particle of testimony going to show that the defendants ever acquiesced in or consented to the employés riding upon the logging cars; on the contrary, the proof on that point was entirely one sided, and showed that the defendants oft-times made the employés get off the logging cars; in fact, they did make them get off every time the employés were discovered on the logging cars, and told them it was dangerous to ride on the cars; and the uncontradicted proof shows that the employés operating the train were told by the defendants not to allow any of the employés to ride on the logging cars.' And because said charge was upon the weight of the evidence, and assumed conditions and facts not testified to. And because said charge is argumentative in behalf of the plaintiff, and does not charge the law on issues raised by the pleadings and evidence. And because said paragraph requires the jury to find for the plaintiff, unless they further found that the plaintiff himself was guilty of contributory negligence in being upon the train at the place where he had taken his position thereon, or in attempting to jump therefrom, if he did so. Under paragraph 2 of the court's charge, the jury is instructed that, in order for the plaintiff to have been guilty of contributory negligence, he would have had to contribute towards producing the wreck, and without which the wreck would not have happened."

[8] In so far as the propositions seek to enlarge upon these objections and to state other objections not embraced in the assignment of error, they will not be considered. Addressing ourselves then to the several objections to the charge set out above, the charge is not subject to the criticism that it assumes that the defendants consented to or acquiesced in the act of the plaintiff in riding upon the logging cars. The language of the charge referred to clearly submits this as an issue to be found by the jury. So the specific objection made must fail. If, however, appellants intended to base their objections upon the ground that there was no evidence to raise this issue, the undisputed evidence negativing such consent or acquiescence, as stated in the proposition, we cannot agree to this conclusion. The evidence is very conflicting upon this issue, and the preponderance of it perhaps shows that the act of riding on the logging cars was against the orders of the Railway Company, nevertheless, looking to the entire evidence, we cannot say that there was no evidence to support appellee's contention on this point, and to require the submission of the issue. It is of some significance on this issue that there was evidence that there were between 40 and 50 men to be carried, that outside these logging cars no place was provided for them to ride except the engine and tender, which also had to carry wood for firing the engine, and that these places were not sufficient for that purpose. There was also testimony that the men habitually rode on the logging cars, especially since the caboose had been out of use.

The second objection is that the charge was upon the weight of the evidence and assumed conditions and facts not testified to. We have examined the charge carefully, and (if we are required to consider an objection so general) can find nothing to justify this criticism.

The third objection, that the charge is argumentative, etc., is too general, but appears to us to be groundless.

The fourth objection is groundless. There is nothing in the charge that could afford ground for the criticism, that it requires the jury to find for the plaintiff, unless they find that he was guilty of contributory negligence. The liability of defendants on any ground is clearly submitted as an issue to be determined by the jury. We have examined the paragraph of the charge carefully in view of the objections urged, and can find nothing to support any of them. The assignment and the several propositions thereunder are overruled.

[9] There was no error in instructing the jury, as set out in the twelfth assignment of error, that, if appellee "took up a position more dangerous than some other parts of the train when he was permitted to ride, he should be held to have assumed the risk of the more dangerous position, yet he did not assume thereby any risk of danger resulting from and proximately caused by the negligence of defendants, their agents and servants." This was a correct statement of the law.

[10] The court did not err in that portion of the charge in which the jury was instructed with regard to the degree of care required of the Railway Company. If the Railway Company had contracted with the Lumber Company to transport appellee with others on this train for a consideration paid by the Lumber Company, appellee was a passenger, and entitled to the exercise of that degree of care required in the carriage of passengers in the kind of vehicle used, always taking into consideration the character of the conveyance and the obviously greater danger in riding on a logging car than in an ordinary passenger car. This was in substance the principle stated in the charge. Railway Co. v. Wilson, 79 Tex.

375, 15 S. W. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345; Railway Co. v. Lauricella, 87 Tex. 277, 28 S. W. 277, 47 Am. St. Rep. 103; Railway Co. v. Fenwick, 34 Tex. Civ. App. 222, 78 S. W. 551.

[11] The charge on the measure of damages, set out in the thirteenth and fourteenth assignments of error, was that the jury "might take into consideration the loss of time, if any, which plaintiff has already suffered, as well as the loss of time, if any, which you may find he will suffer in the future," etc., also that if the jury finds that plaintiff is insane, and that such insanity was proximately caused by his injuries, and the jury should find in his favor, then in estimating his damages the jury should take into consideration the fact of the insanity, so far as it affects his earning power. This was a proper charge under the pleadings and evidence. It is not subject to the objection that it authorized the recovery of double damages. Damages for loss of earning, capacity, or of time, produced by insanity would be recoverable in the same way and to the same extent as for such effects produced by a broken leg, or any other injury. It would be an extraordinary conclusion that because appellee was incapacitated from labor while insane he could not recover for such loss of earning power, if the insanity was proximately caused by the injuries for the proximate consequences of which defendants were otherwise liable.

[12] Objection is made by appellee to the consideration of the fifteenth assignment of error on the ground that only a part of the assignment is copied in the brief. This we find to be true, and the objection is well taken. Other exceptions are taken to the assignment on the ground that it presents several distinct grounds of error, that it is too general on the question of the excessiveness of the verdict, and that the statement following the assignment is insufficient. We are inclined to think that all of these exceptions are well taken. As stated, it is difficult to understand what is undertaken to be presented by the assignment. The proposition under the assignments is as follows: "The court having authorized the jury to award damages on account of plaintiff's alleged insanity, without evidence to justify a finding that such insanity was a proximate result of the alleged derailment and injury, and having authorized double damages therefor, and the verdict in the sum of $7,500, being general in form, will be presumed to embrace allowance of the items so improperly authorized by the charge on the ground of insanity."

[13] What we have said is sufficient to dispose of the questions presented. The evidence was sufficient to support the finding that the insanity was the proximate result of the injuries received in the wreck. Several witnesses testified that there was never any indication of insanity prior thereto, and there was testimony both that the insanity might have resulted entirely from these injuries, and also that, if appellee was predisposed to insanity, these injuries might have brought on the insane condition. The charge of the court, as we have seen, did not authorize the recovery of double damages.

There is no merit in the sixteenth assignment of error. The court submitted to the jury the issue of contributory negligence on the part of appellee either "in being upon said train at the place where he had taken his position thereon, or in attempting to jump therefrom," and the charge precluded recovery if the jury found that he was guilty of contributory negligence in either particular. We doubt if any enlargement or elaboration of these points would have been of material assistance to the jury.

[14] The seventeenth, eighteenth, and nineteenth assignments of error cannot be considered. The only statement under either is, "See statement under fifteenth assignment of error." Referring to the statement under the fifteenth assignment of error, we find that it refers to a question in no way relating to the questions presented by either of these assignments. These assignments relate to the issues of contributory negligence and to the refusal of special charges on that issue. The statement under the fifteenth assignment refers solely to the issue of insanity as proximately caused by the injuries and the evidence relied upon to support appellants' contention on this issue.

[15] Appellants requested the court to charge the jury, in substance, that if the train was provided with a tender upon which appellee could have ridden with reasonable safety, and it was sufficiently commodious to accommodate him and the other hands, and that appellee voluntarily placed himself upon one of the logging cars, and that this position was more dangerous and he would not have been injured if he had been on the tender, he could not recover. This was, in effect, an instruction that the act of appellee in thus taking position on the logging cars in the circumstances stated was contributory negligence precluding recovery as matter of law. There was no error in refusing the charge. It was an issue for the jury whether in the circumstances stated in the requested charge appellee acted as a person of ordinary prudence would have acted, taking into consideration all of the circumstances disclosed by the record. Bonner v. Glenn, 79 Tex. 531, 15 S. W. 572; Railway Co. v. Welch, 24 S. W. 854.

We have examined each of the assignments (except the seventeenth, eighteenth, and nineteenth, which for the reasons stated cannot be considered) and the several propositions

thereunder, and our conclusion is that none of them presents sufficient grounds for reversing the judgment, and it is therefore affirmed.

Affirmed.