LAKESIDE IRR. CO. et al. v. BUFFINGTON. (No. 5283.)

(Court of Civil Appeals of Texas. San Antonio. May 20, 1914. Rehearing Denied June 17, 1914.)

1. CORPORATIONS (§ 619*)—DISSOLUTION—APPOINTMENT OF RECEIVER—STATUTORY PROVISION—"RECEIVER."

Under Rev. St. 1911, art. 1206, providing that, upon the dissolution of a corporation, "unless a receiver is appointed by some court of competent jurisdiction," the president and directors shall be trustees of the creditors and stockholders, with full power to wind up its affairs, a receiver appointed for a corporation by a court, and legally discharged prior to the dissolution of the corporation, was not a "receiver" within the exception of the statute, since, as he was not appointed in a suit to forfeit the charter of the corporation, the corporation was not dissolved, and stood as though no receivership had been taken out.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2459, 2460; Dec. Dig. § 619.*

For other definitions, see Words and Phrases, vol. 7, pp. 5993–5997; vol. 8, pp. 7780, 7781.]

2. CORPORATIONS (§ 619*)—DISSOLUTION—RECEIVERSHIP—STATUTORY PROVISION.

Under Rev. St. 1911, art. 1206, providing that, upon the dissolution of a corporation, unless a receiver is appointed, the president and directors shall be trustees of the creditors and stockholders, the stockholders could not, after dissolution, override the statute by appointing a third party trustee so as to prevent the president and directors from becoming trustees of the creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2459, 2460; Dec. Dig. § 619.*]

3. CORPORATIONS (§ 630*)—DISSOLUTION—ACTION BY CREDITORS AFTER DISSOLUTION—PARTIES INJURED BY DECREE.

In an action by a creditor of a corporation after its dissolution against the president and directors thereof as trustees, the fact that an equitable lien was fixed and foreclosed upon property of the corporation in the hands of one of such directors, who had by the stockholders been constituted trustee to wind up its affairs and its property conveyed to him, was not injurious to such director, Rev. St. 1911, art. 1207, making the president and directors, as trustees of the creditors upon dissolution, liable to the creditors and stockholders to the extent of the property coming into their hands, and article 1209 giving him the right of contribution against the stockholders if he should be compelled to pay more than his just proportion.

[Ed. Note.—For other cases see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. § 630.*]

4. CORPORATIONS (§ 630*)—ACTION AGAINST CORPORATION AFTER DISSOLUTION—PARTIES.

That the judgment in such action was in name against the corporation, and the foreclosure against the director was not material, since it was in effect a suit to subject the property of the corporation to plaintiff's demand, and the statute gives the trustees the right to maintain or defend actions in the name of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. § 630.*]

5. CORPORATIONS (§ 630*)—ACTION AGAINST CORPORATION AFTER DISSOLUTION—PARTIES.

In an action by a creditor of a corporation, after dissolution, against the president and directors as trustees, as authorized by Rev. St. 1911, art. 1206, making, upon dissolution of a corporation, its president and directors trustees of creditors, and authorizing actions against them, the stockholders were not necessary parties.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. § 630.*]

6. CORPORATIONS (§ 547*) — DISSOLUTION — LIEN OF CREDITORS.

The creditors of a corporation in liquidation have an equitable lien on its assets in the hands of the stockholders or trustees to secure their claims.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2178–2181; Dec. Dig. § 547.*]

7. APPEAL AND ERROR (§ 736*)—ASSIGNMENT OF ERRORS—SPECIFICATION OF ERRORS.

An assignment of error, containing more than one ground of complaint, and not being the same in the brief as that set forth in the motion for new trial, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. § 736.*]

8. FRAUDS, STATUTE OF (§ 33*)—PROMISE TO ANSWER FOR DEFAULT OF ANOTHER.

The Lakeside Irrigation Company, upon purchasing the irrigation plant of the Eagle Lake Irrigation Company, in its deed of purchase, assumed to carry out the rental agreements of the Eagle Lake Company as to the furnishing of water to its tenants. Plaintiff, before taking a lease from the Eagle Lake Company, was promised by the Lakeside Company that they would furnish him all necessary water for one-fifth the crop. Held, that the promise of the Lakeside Company to furnish the water was not a mere voluntary verbal guaranty of a pre-existing contract of the Eagle Lake Company, but a direct promise for a sufficient present consideration.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 50–53, 56; Dec. Dig. § 33.*]

9. WATERS AND WATER COURSES (§ 156*)—IRRIGATION CONTRACT — SALE OF PLANT — ESTATES AND INTERESTS CREATED—INCORPOREAL HEREDITAMENT.

A clause in a deed of purchase by the Lakeside Irrigation Company of the irrigation plant of the Eagle Lake Irrigation Company, binding the grantee to furnish water for lands leased by the grantor, created an incorporeal hereditament appurtenant to the land and running with it.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158, 174–183; Dec. Dig. § 156.*]

10. WATERS AND WATER COURSES (§ 254*)—IRRIGATION CONTRACT—SALE OF PLANT—ACTION AGAINST PURCHASER.

Where defendant irrigation company purchased the plant of another and assumed its contracts, plaintiff, having a contract with such other company, could maintain an action direct against the purchasing company on its assumed obligation.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

**11.** WATERS AND WATER COURSES (§ 254*)—IRRIGATION CONTRACT—CONSTRUCTION.

A contract between an irrigation company and a tenant provided that the manner of distributing water upon the land leased was to rest entirely with the irrigation company, and another clause bound the company to "furnish the necessary water to properly irrigate the said land for rice culture." *Held*, that, though the company had the right to say when water should be furnished, it could not refuse to furnish any water at all on the ground that the crop was worthless.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

**12.** WATERS AND WATER COURSES (§ 254*)—IRRIGATION CONTRACT—CONSTRUCTION.

Where an action by a tenant of E. irrigation company against defendant irrigation company for damages for failure to furnish water was not based solely on defendant's assumption of the obligation of the E. company to furnish the water, but also upon a direct promise by defendant, a limitation of the amount of damages in the lease from the E. company did not inure to the benefit of defendant.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 311; Dec. Dig. § 254.*]

**13.** APPEAL AND ERROR (§ 215*)—PRESENTATION AND RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—EXCEPTIONS.

Defendant, by not excepting in the trial court to a charge on the ground that it was on the weight of the evidence, waived such objection, and hence an assignment on such ground could not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. § 215.*]

**14.** APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS AND STATEMENTS.

Assignments not followed by sufficient propositions and statements will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**15.** APPEAL AND ERROR (§ 215*)—PRESENTATION AND RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—NECESSITY OF EXCEPTIONS.

It not being made to appear that objection was made in the trial court to the portion of a charge complained of in an assignment, the assignment will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. § 215.*]

**16.** APPEAL AND ERROR (§ 751*)—PRESENTATION AND RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—MOTION FOR NEW TRIAL.

Where an assignment as set out in the brief was not the same as contained in the motion for new trial, it would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3039–3042; Dec. Dig. § 751.*]

**17.** APPEAL AND ERROR (§ 731*)—ASSIGNMENT OF ERROR—SPECIFICATION OF ERRORS.

An assignment, "The court erred in receiving the verdict and rendering judgment thereon in this case," was too general for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3017–3021; Dec. Dig. § 731.*]

Appeal from District Court, Colorado County; M. Kennon, Judge.

Action by J. B. Buffington against the Lakeside Irrigation Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

W. L. Adkins, of Columbus, and W. S. Strickland, of Eagle Lake, for appellants. A. J. Wirtz, of Eagle Lake, and Ring, Carothers & Brown, of Houston, for appellee.

CARL, J. J. B. Buffington brought this suit against the Lakeside Irrigation Company and the Eagle Lake Rice Irrigation Company, B. L. Vineyard, F. O. Norris, and W. F. B. Wicker, to recover damages alleged to have been suffered by Buffington by reason of the failure of the irrigation companies to furnish him sufficient water to properly irrigate 100 acres of land leased to him by the Eagle Lake Rice Irrigation Company. It is charged that the Eagle Lake Rice Irrigation Company conveyed its irrigation plant, canals, etc., to J. J. Raezer, who held for and conveyed same to Lakeside Irrigation Company, and the last-named company assumed the contracts and obligations of the Eagle Lake Rice Irrigation Company; that appellee had made a contract for the lease or rental of 100 acres of land, and was to pay as rent therefor three-tenths of the rice crop to the Eagle Lake Company as rent, and one-fifth of the crop to the Lakeside Irrigation Company for the water; that the rental contract was made with the Eagle Lake Company, same stipulating that one-half was to be paid to that company as rent, but that in truth and in fact the contract was made with both companies; that before he made the lease contract he was informed by the Eagle Lake Company that the water would be furnished by the Lakeside Irrigation Company for one-fifth of the crop, and that the Eagle Lake Company would guarantee the water; that he went to the Lakeside Company and told its manager that, unless the Lakeside Company would guarantee and promise him that they would furnish the water to him, he would not rent the land; that the Lakeside Company informed him that they would get one-fifth of the crop, and agreed with him that if he would rent the land, they would furnish him with water in consideration of such one-fifth of the rice; that he then went back to the Eagle Lake Company, and it presented him with a contract, which he signed. It is charged that this contract was recognized by both irrigation companies, but that both of them failed to furnish sufficient water, and by loss of his crop, he was damaged in the sum of $1,700. It is also alleged that the Eagle Lake Company had made an attempt to dissolve the corporation, and had distributed its assets among its stockholders, and that the bulk of the real estate had

been transferred to B. L. Vineyard as trustee, and was still held by him. Vineyard, Norris, and Wicker were the directors of the Eagle Lake Rice Irrigation Company at the time the distribution was made, and it was sought to hold them personally liable because they had distributed the assets of the corporation without making provision for the payment of the plaintiff's claim. An equitable lien was claimed against the land transferred to Vineyard. Vineyard answered, giving the names of the stockholders of the Eagle Lake Company, and asked that they be made parties. By the terms of the lease, which was to begin January 1, 1910, and terminate when the rice was gathered, the Eagle Lake Company was to furnish the seed for one planting, along with the land, "and further agreed that through its contract with said Lakeside Irrigation Company said Eagle Lake Rice Irrigation Company would furnish the necessary water to properly irrigate said land," and plaintiff was to keep up the flumes, levees, etc., and work the land in a farmerlike manner, planting the rice by June 1, 1910. The petition alleges that plaintiff complied with and that defendants breached the contract. Lakeside Irrigation Company answered, setting out that it had a contract, dated December 24, 1909, with its codefendant, Eagle Lake Company, by the terms of which it was agreed it would furnish water to plaintiff under such terms and conditions as were set forth in the contract between plaintiff and the Eagle Lake Company, and which contract provided that in case of damages caused by failure to furnish water that plaintiff should not recover damages of the Eagle Lake Company in excess of $3 per acre. The Eagle Lake Company pleaded its dissolution before the suit, denied generally the allegations, and alleged that the Lakeside Irrigation Company had assumed its contractual obligations when it bought its plant, etc., and prayed for judgment over against the Lakeside Company in case the plaintiff should recover of it. It was also alleged that F. O. Norris had been appointed receiver of the Eagle Lake Company in the early part of the year 1908 for the purpose of taking charge of its affairs; that he had paid the debts then existing against it, and said receiver had been discharged; that about December 27, 1909, at a meeting of the stockholders, more than four-fifths being present, they voted for the dissolution of the corporation and articles of dissolution ordered filed with the Secretary of the State of Texas, which was duly done before the accrual of the plaintiff's cause of action. Vineyard and Wicker pleaded that they were acting as trustees in winding up the affairs of the Eagle Lake Rice Irrigation Company, and had discharged the trust and been released by the stockholders of the Eagle Lake Company; but B. L. Vineyard specially alleges that the contract sued upon was by the stockholders "placed in his hands for compliance as trustee for the said stockholders of said corporation." And it is further alleged by Vineyard that the stockholders authorized and empowered him to do any and all things necessary to carry out said contract. In case of judgment against them, they prayed for judgment over against both irrigation companies. The verdict of the jury was for a total of $1,200, $243 was against both irrigation companies, and $957 was against the Lakeside Irrigation Company alone, and of the amount found against both companies, the Eagle Lake Company was given judgment over against the Lakeside Company for $103.50, and there was a verdict in favor of W. F. B. Wicker. But an equitable lien was found and foreclosed on the lands in B. L. Vineyard's hands as trustee to secure the judgment rendered against the Eagle Lake Company. The cause was dismissed as to F. O. Norris.

We will first treat the assignments of error presented by appellants Eagle Lake Rice Irrigation Company and B. L. Vineyard, and such other assignments not thereby disposed of will be noticed later.

[1] The receiver was appointed in the early part of 1908 for the Eagle Lake Company, the known debts were paid and the receiver discharged December 27, 1909, and the certificate of dissolution of the corporation was dated March 31, 1910, and filed in the Secretary of State's office on April 2, 1910. This suit was filed about one year after the articles of dissolution were filed with the Secretary of State.

Article 1206 of the Revised Civil Statutes provides that:

"Upon the dissolution of any corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and to this end, and for this purpose they may, in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and to exercise the full power and authority of said company over such assets and properties; and the existence of every corporation may be continued for three years after its dissolution from whatever cause for the purpose of enabling those charged with the duty to settle up its affairs; and in case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the court so long as in its discretion it is necessary to suitably settle up the affairs of such corporation."

The clause "unless a receiver is appointed by some court of competent jurisdiction," in the above article of the statute, does not

apply to this case because that receiver had been appointed, served by paying off the debts, and was by the court legally discharged in December, 1909, prior to the dissolution of the corporation, the 2d day of April, 1910. Consequently, after the court ceased to administer the affairs of the corporation by discharging its receiver, the corporation stood as though no receivership had been taken out. It was not in a suit to forfeit the charter that the receiver was appointed, and the corporation was not then dissolved. For this reason the exception in the article of the statute would not apply, and upon the voluntary dissolution of the corporation by the stockholders, the president and directors would become trustees of its property for the creditors and stockholders, with full power to manage and control its affairs, and they could maintain and defend actions in the name of the corporation.

Article 1207 of the Revised Civil Statutes provides that:

"The trustees mentioned in the preceding article shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

[2-5] The fact that the stockholders subsequent to the dissolution of the corporation constituted B. L. Vineyard their trustee for the property undisposed of would not be material; because the plain letter of the statute makes the president and directors trustees for both creditors and stockholders, and this statutory provision cannot be overridden by any action the stockholders may make, especially in so far as the creditors are concerned. This suit was brought against the corporation and its president and directors. The cause was dismissed as to Norris, one of the directors, and judgment was in favor of Wicker, but a lien was fixed and foreclosed upon the property of the corporation in the hands of Vineyard to secure the judgment so rendered against the corporation. Vineyard could not be injured by this, because no personal judgment was rendered against him. While the statute gives creditors the right to maintain a suit against all of the trustees, it at the same time provides that they shall be severally responsible to the extent of the property and effects coming into their hands. If Vineyard should have been compelled to pay more than his just proportion, he would have been protected by article 1209, which gives him the right of contribution from the stockholders. That the judgment was in name against the Eagle Lake Rice Irrigation Company and the foreclosure against Vineyard is not material, because it is in effect a suit to subject the property of the corporation to the plaintiff's demand, and the statute gives the trustees the right to maintain or defend actions in the name of the corporation. The stockholders were not necessary parties to the suit.

The first five assignments of error of the Eagle Lake Company and B. L. Vineyard are overruled.

By the sixth assignment complaint is made that the court gave this charge:

"If you find a verdict against the Eagle Lake Rice Irrigation Company, you will find the plaintiff has an equitable lien upon the land described in this charge as having been transferred to B. L. Vineyard, and will find that such lien be foreclosed to the amount that you find against said Eagle Lake Rice Irrigation Company."

The complaint is that the court erred in not submitting the matter of the existence of the equitable lien to the jury.

[6] Vineyard was vice president and a director of the corporation at the time the assets were distributed among its stockholders in 1910, and he received a large part of the property, including that upon which the equitable lien was fixed and foreclosed. He got this in the process of liquidation. The assignments first and ninth are overruled, because the creditors of a liquidating corporation have an equitable lien on its assets in the hands of the stockholders or trustees to secure their claims, and the facts as to the property foreclosed on were undisputed. National Bank v. Investment Co., 74 Tex. 437, 12 S. W. 101; Clevenger v. Galloway & Garrison, 104 S. W. 914; Panhandle Natl. Bk. v. Emery, 78 Tex. 498, 15 S. W. 24; Scott v. F. & M. Natl. Bank, 66 S. W. 499; Publishing Co. v. Hitson, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551.

[7] The seventh assignment complains, in substance, that the evidence fails to show the amount of damage found by the jury. We have carefully examined the evidence, and conclude that the damages recovered were sufficiently proven.

The judgment against the Eagle Lake Rice Irrigation Company was for $243, and the foreclosure upon the property in the hands of Vineyard was only to that extent; and we think the evidence was ample to sustain that amount. The assignment is overruled; and the eighth assignment will not be considered, because it contains more than one ground of complaint, and it is not the same in the brief as set forth in the motion for a new trial. Knox v. Robbins, 151 S. W. 1134. Bowers v. Goats, 146 S. W. 1013.

[8, 9] The first assignment of the Lakeside Irrigation Company complains of the refusal of the trial court to give a peremptory instruction to the jury to find for it; and it contends that its promise to furnish water was a voluntary verbal guaranty of a pre-existing contract of another, without consideration, and void. But Buffington testified that before making his contract with the Eagle Lake Company, he went to the manager of the Lakeside Company and told him about his contemplated rental contract, and that he did not want to, and would not, rent the land unless he could be assured of getting water; that while the contracts of rental were made in the name of the Eagle

Lake Company, the Lakeside Company in its deeds of purchase had assumed to carry out the rental agreements as to the furnishing of water, and one-fifth of the crop was to go to the Lakeside Company as compensation for furnishing the water. The deeds bound that company to water the land. There is no contention that one-fifth of the crop was not to go to the Lakeside Company. It in fact got that proportion of the crop that was raised; and when appellee went to its manager before making the contract, which was partly for the Lakeside Company's benefit, and told him that he would not rent the land unless his company would assure him that he would get water for his crop, there was a sufficient consideration. And it was not a pre-existing contract, but one then being made, which fact was known to the Lakeside Company. The clause in the deeds binding the Lakeside Company to furnish water to irrigate crops upon the land created an incorporeal hereditament, appurtenant to the land and running with it. It was not a verbal promise to answer for the default of another, but was a direct and positive promise to undertake to do a thing for a sufficient present consideration. Its contract of assumption inured to the benefit of the plaintiff. Spann v. Cochran, 63 Tex. 242; Meyer v. Walker-Smith Co., 127 S. W. 1120; W. U. Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Mathonican v. Scott & Baldwin, 87 Tex. 396, 28 S. W. 1063; Am.-Rio Grande Land & Irri. Co. v. Mercedes, 155 S. W. 293.

[10] By its second assignment the Lakeside Irrigation Company contends that the court erred in refusing to give its requested special charge No. 2, which is to the effect that if the jury should believe that some time in the fall of 1909 there was a verbal lease agreement between plaintiff and B. L. Vineyard, the president of the Eagle Lake Rice Irrigation Company, and that the same was reduced to writing December 24, 1909, to return a verdict in favor of the Lakeside Irrigation Company. Vineyard was not president of the Eagle Lake Company at that time; Norris holding that position. This charge, if given, would have ignored the duties the Lakeside Company owed appellee by reason of the clauses in its deeds whereby it became bound to furnish water to irrigate this land, and any duties it might owe appellee as a public service corporation. The assignment is overruled. Spann v. Cochran, 63 Tex. 242; W. U. Tel. Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Mathonican v. Scott & Baldwin, 87 Tex. 396, 28 S. W. 1063; Am.-Rio Grande Land & Irr. Co. v. Mercedes, 155 S. W. 293; Meyer v. Walker-Smith Co., 127 S. W. 1120.

[11] The Lakeside Irrigation Company requested and the court refused to give the following special charge:

"You are instructed that J. J. Raezer was the manager for the Eagle Lake Rice Irrigation Company, and had control of the lands and tenants of said company, including the plaintiff, J. B. Buffington, and the land planted by him in rice for the year 1910, and that by the terms of the written contract between the said J. B. Buffington and the Eagle Lake Rice Irrigation Company. plaintiff, J. B. Buffington, agreed that the Eagle Lake Rice Irrigation Company, or its manager, should have absolute and entire control of the canals, flumes, and water supply, and that said Eagle Lake Rice Irrigation Company, or its said manager, was to be the sole judge as to when water was to be furnished on said land. Therefore, you are instructed, if you find from the evidence that said J. J. Raezer refused to furnish to the plaintiff, J. B. Buffington, sufficient water to irrigate his said rice, and by reason thereof same was damaged or destroyed, and you further find that Henry Theuman, who occupied the position of water man for the Lakeside Irrigation Company, was ready and willing to furnish such water, and if you also find that John J. Raezer instructed the said Theuman not to water said land, then you will find your verdict in favor of the Lakeside Irrigation Company."

The evidence shows that Raezer was manager of both the Eagle Lake Company and the Lakeside Company. The appellee's contract with the Eagle Lake Company has this clause in it:

"The manner of distributing water to, on or upon the land of the party of the second part is to rest entirely with the party of the first part or its manager, who is to determine the most efficient and economical distribution thereof; and it is well understood by both parties to this contract that the party of the first part or its manager has absolute and entire control of the canal, flumes and water supply, and is to be the sole judge as to when same shall be furnished."

Raezer testified that he was general manager and secretary of the Lakeside Irrigation Company, and also had the supervision of the Eagle Lake Company's land business, including tenants. He says:

"The later planting he absolutely had no stand at all, and I refused to irrigate the same, but afterwards, to satisfy him and to show him he had no rice, I flooded a few pieces for him, and showed him that there was no rice on the said ground."

He says he refused to water the 62 acres because there was no stand, and he would have been throwing away water.

"I was general manager and secretary of the Lakeside Irrigation Company during 1910. My duties in such position consisted of absolute control over canals, pumping plant, etc. I did have authority to say on behalf of said company to whom water should be furnished by said company. Yes, sir; I did make water contracts for said company."

So Raezer is in the attitude of saying that as manager of the Lakeside Company he was ready and willing to furnish water, but as manager of the Eagle Lake Company he was unwilling to furnish same because of an insufficient stand of rice.

This contract, while it gave Raezer the right, on behalf of the Eagle Lake Company, to say when water should be furnished, did not give him or the company the right to refuse to furnish any water at all. It contains also the clause:

"And the party of the first part through its contract with the Lakeside Irrigation Co. shall

furnish the necessary water to properly irrigate the said land for rice culture, after the rice is up and growing."

So it will be seen that the company is bound to furnish necessary water, but has the sole right to say when that shall be done. This does not mean that it may not be done at all, but is a right to be exercised in a reasonable manner.

The requested charge is further objectionable, because it assumes that Henry Theuman is in charge of the Lakeside Company's canals and water, when the evidence shows that he was water and canal boss, with Raezer over him in full control. The third assignment is overruled; and the fourth and fifth assignments, being without merit, are also overruled.

[12] Lakeside Irrigation Company complains of the court's refusal to give its requested special charge No. 10, which is to the effect that if that company should be found liable, it could not be held in damages to exceed $3 per acre. This is based upon the theory that since the Lakeside Company agreed in its deeds of purchase to carry out the' contracts of the Eagle Lake Company, and that company's contract with appellee limited its liability to $3 per acre for damages, the limitation would inure to the benefit of the Lakeside Company. This might be correct if appellee's suit had been based solely upon the contract of assumption by the Lakeside Company in its purchase deeds. But it must be borne in mind that the pleadings charge that before making the contract with the Eagle Lake Company, appellee went to the Lakeside Company's manager and told him that, unless that company would guarantee him water, he would not rent the land from the Eagle Lake Company; and the Lakeside Company agreed to do so, in consideration of one-fifth of the crop to be raised, as water rent. The deeds do not contain such limitation as to damages, and no limitation appears in the agreement between the Lakeside Company and appellee. We think the court properly refused to give said charge, and the sixth assignment is overruled.

The seventh assignment is disposed of adversely to appellants, by what we have said in reference to similar assignments of the Eagle Lake Company and B. L. Vineyard.

[13] The eighth assignment will not be considered, because complaint is made therein that paragraph No. 5 of the court's charge is upon the weight of the evidence, and the objection filed to that paragraph in the trial court did not raise the question that it was on the weight of the evidence. Therefore, not having excepted to the charge on the ground now urged, appellant has waived any objection thereto. Rev. St. art. 1971, as amended by Acts 1913, p. 113.

[14, 15] The ninth and tenth assignments will not be considered, because they are not followed by sufficient propositions and statements, and it is not made to appear that objection was made to the portions of the charge complained of in the trial court.

There is no merit in the eleventh, twelfth, and thirteenth assignments, and they are overruled.

[16, 17] The fourteenth assignment will not be considered because the brief does not set it out the same as filed in the lower court. As stated in the brief it says: "The court erred in receiving the verdict and rendering judgment thereon in this case." This is too general; and, if we look to the assignment in the motion for a new trial, it would be subject to the objection that it is multifarious. Clearly the brief does not set out even substantially the assignment as contained in the motion for a new trial. Bowers v. Goats, 146 S. W. 1013; Imperial Irr. Co. v. McKenzie, 157 S. W. 751; Fessinger v. El Paso Times Co., 154 S. W. 1171.

After careful consideration, we conclude that the judgment should be affirmed.